United States Steel Corporation, Appellant, *v.* Workmen's Compensation Appeal Board and Joseph M. Muniz, Jr., Appellees.

Argued June 7, 1973, before Judges CRUMLISH, JR., KRAMER and BLATT, sitting as a panel of three.

*James D. Strader,* with him *Richard F. Lerach,* for appellant.

*Thomas H. M. Hough,* with him *Lucchino, Galterns & Hough,* for appellees.

OPINION BY JUDGE KRAMER, August 1, 1973:

This is an appeal from an order, dated November 29, 1972, of the Workmen's Compensation Appeal Board (Board) dismissing the appeal of the United States Steel Corporation (USS) and thereby affirming the award of compensation to Joseph M. Muniz, Jr. (Muniz).

The pertinent facts taken from the record are that Muniz, a 29-year-old "solution tender" with six years service to USS, was injured on August 15, 1969 in the course of his employment. As a solution tender, Muniz' work entailed the lowering of a 95-pound, five feet long, anode into a vat for an electrolytic tinning process. The anode was attached to a hook which was raised and lowered by way of a jib crane. The process in-

volves the use of a magnetic field, which occasionally causes the anode to become attached to a steel beam in the middle of the electrolytic equipment. On August 15, 1969, as Muniz was lowering an anode, it became attached to the steel beam through the magnetic force. When this occurred, he released his hold on the rope which operated the crane, so as to release the anode from the beam. For some unexplained reason, the crane operated, thereby pulling and squeezing Muniz' hand, wrist and arm. He immediately experienced pain. The engineering expert witness of USS admitted that such an occurrence, though unlikely, was possible. Muniz immediately informed his foreman, and was sent to the company medical office. Although there is some confusion in the record as to the history of Muniz' medical treatment, the record contains sufficient evidence from which the referee and Board could conclude that Muniz suffered an aseptic necrosis of the carpal lunate in the right wrist, which is the death of bone in the wrist, frequently occurring about six months (or later) after a "crush-type" injury. Muniz underwent two surgical operations, the first for the lunate fracture and removal of the dead bone, and the second to free a tendon causing resultant thumb trouble. The injury was described as a permanent one resulting in a 50% disability to the use of the right wrist.

USS raises three issues, namely (1) that the referee's and Board's finding that Muniz was injured within the scope of his employment is not supported by substantial evidence, (2) that the Board's award of total disability benefits was in error because of the availability of work for Muniz and (3) that the Board erred in setting aside the referee's granting of subrogation against workmen's compensation benefits awarded where the employer has paid disability benefits to the worker on the basis that the disability was then determined by the employer to be "non-occupational."

Although the Workmen's Compensation Law was drastically amended in 1972 (Act of February 8, 1972, P. L. , Act No. 12; and Act of March 28, 1972, P. L. , Act No. 61) the scope of review of *this* Court has not changed. Where the party with the burden before the Board is successful, we need only determine whether there is substantial evidence in the record to support the findings of fact; and we are also to determine whether or not the Board made any errors of law. *See Universal Cyclops Steel Corporation v. Krawczynski,* 9 Pa. Commonwealth Ct. 176, 305 A. 2d 757 (1973).

Our careful reading of the record in this case permits us to conclude that there is sufficient substantial competent evidence in the record to establish that Muniz was injured within the scope of his employment. We next turn to the second issue raised by USS. In this regard, USS presented the testimony of an employe of an independent employment agency operating in Western Pennsylvania. This witness testified generally that there were many jobs available to persons with Muniz' injuries, as they had been described to the witness. He also made note that the employment ads in the local Pittsburgh newspapers indicated the availability of many jobs for persons with partial disability. However, on cross-examination, this witness admitted (1) that if a prospective worker had been declared totally disabled by the Social Security Agency (as Muniz had), and (2) that if a prospective worker had been denied employment by his prior employer (the record discloses that USS had so denied Muniz), these additional factors would make a difference in the witness' evaluation of the availability of work for such a disabled worker. These two factors, immediately mentioned above, were not given to the witness as part of his hypothetical question.

USS relies upon *Barrett v. Otis Elevator Company,* 431 Pa. 446, 246 A. 2d 668 (1968), *Petrone v. Moffat*

*Coal Company,* 427 Pa. 5, 233 A. 2d 891 (1967), and *Matrunics v. Ruffsdale Coal Company, Inc.,* 6 Pa. Commonwealth Ct. 420, 295 A. 2d 629 (1972), for the proposition that they had met their burden of proving that work was available to Muniz, a partially disabled worker. All these cases cited by USS make it clear that the burden is upon the employer to prove the availability of work to the individual partially disabled worker involved, with regard to the employer's liability for total or partial compensation benefits. In the *Barrett* case, Justice EAGEN stated: "[W]e hold that, once the claimant has discharged his burden of proving that, because of his injury, he is unable to do the type of work he was engaged in when injured, the employer has the burden of proving that other work is available to the claimant which he is capable of obtaining." 431 Pa. at 458, 246 A. 2d at 674.

The record in this case conclusively establishes that Muniz cannot engage in the type of work he was engaged in prior to his injury. Our reading of *Barrett* teaches us that it is not just that there is work available for partially disabled persons, but that in addition, there is work available to the individual partially disabled worker. In other words, it is not just generally available work, but rather work specifically related to the worker involved in the case at issue. As already pointed out, USS' expert employment witness did not take into account, nor was he given, pertinent factual information concerning Muniz, from which the expert could make a determination that work was available to Muniz. The *Matrunics* case is distinguishable from this case in that there the employer presented evidence of at least nine specific positions which the claimant in that case could fill and which the claimant did not contradict on the record. Hence, *Matrunics* does not control the outcome of this case. Once again, our care-

ful reading of the record permits us to conclude that there is sufficient substantial competent evidence in the record to permit the Board to hold that USS had not met its burden.

On the third issue raised by USS, we hold that the Board committed an error of law. The second paragraph of Section 319 of the Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P. L. 736, added by Act of June 21, 1939, P. L. 520, as amended, 77 P.S. §671 states in pertinent part: "Where an employe has received payments for the disability or medical expense resulting from an injury in the course of his employment paid by the employer or an insurance company on the basis that the injury and disability were not compensable under this act in the event of an agreement or award for that injury the employer or insurance company who made the payments shall be subrogated out of the agreement or award to the amount so paid, if the right to subrogation is agreed to by the parties or is established at the time of hearing before the referee or the board." The Board, in its adjudication, stated "There is simply no competent evidence in the record to support the subrogation interest and therefore that claim is not approved." The record does not support this statement. We note in the record that, in its answer to the claim petition of Muniz, USS specifically made note of its subrogation claim on behalf of the Equitable Life Insurance Society of the United States. Also, in his testimony, Muniz admitted that he had received such sickness and accident benefits from May 3, 1970 until May 1, 1971. The record further discloses that these payments were in the amount of $76.00 per week between May 3, 1970 and October 31, 1970 and $17.39 per week from November 1, 1970 through May 1, 1971. In view of these recorded facts, and the mandate of the above-quoted section of the Act, we hold that the Board committed an error of law and

that the referee's acknowledgement of these subrogation rights was correct. Based upon the above, we

ORDER

AND Now, this 1st day of August, 1973, judgment is entered in favor of Joseph M. Muniz, Jr., and against United States Steel Corporation for total disability at the rate of $60.00 per week commencing April 26, 1970 and continuing into the future until such time as his disability ceases or changes in extent or character together with legal interest for compensation benefit payments withheld or not paid; United States Steel Corporation is directed to pay to C. Ramaswamy, M.D. $900.00, Charleroi-Monesson Hospital $192.25 and Charleroi-Monesson Hospital $478.00; and the Equitable Life Insurance Society of the United States is granted subrogation rights for all payments made by it to Joseph M. Muniz, Jr., between May 3, 1970 through May 1, 1971, all of which benefits and payments shall be made under the provisions of the Workmen's Compensation Act.