Charles H. FOSTER

v.

BATH IRON WORKS CORPORATION.

Supreme Judicial Court of Maine.

April 5, 1974.

Preti & Flaherty by Robert E. Burns, Portland, for plaintiff.

Mahoney, Robinson, Mahoney & Norman by Lawrence P. Mahoney, Robert F. Hanson, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, ARCHIBALD and DELAHANTY, JJ.

WEATHERBEE, Justice.

While employed as a machinist at the Bath Iron Works Corporation (BIW) plant on April 19, 1967, the Petitioner fell on some icy stairs and received severe knee injuries which disabled him. Pursuant to an agreement between the employer and Petitioner,[1] the Petitioner was paid $59.81 weekly for total disability for a three month period. Compensation was reinstated by agreement twice in 1967, once for two days and later for a month and a half, ending November 15, 1967. The Petitioner ceased to be employed by BIW on April 19, 1968, one year after his accident. The Petitioner said he left because the work caused great discomfort to his injured leg.

---

1. Such approved agreements are sanctioned by 39 M.R.S.A. § 94 and demonstrate that a compensable injury was received by the Petitioner on April 19, 1967.

In 1970 the Petitioner filed two petitions with the Industrial Accident Commission, one seeking further compensation and the other a determination of the extent of permanent impairment. As a result of the former petition, the Commissioner found the Petitioner to be totally disabled due to the accident. On this basis, BIW was ordered to pay $59.81 per week to Mr. Foster, beginning April 19, 1968. Under the latter petition, the Commissioner ruled that the "claimant's right leg is permanently impaired in the amount of 35%" and required BIW to pay a lump sum of $3,603.-55 to the Petitioner. The Superior Court affirmed these decrees pro forma, and the employer has appealed.[2]

Petitioner had the burden to prove that 1) he is totally disabled, and that 2) the cause, or one of the causes (MacLeod v. Great Northern Paper Co., Me., 268 A. 2d 488 (1970)) of the disability is the fall at the BIW in 1967.

As to the second issue, it was originally agreed that Petitioner's leg was injured in a work related accident and that he should receive compensation therefor. Petitioner presented credible evidence to the effect that his present incapacity results from the same 1967 fall and the Commissioner so found.

No issue is raised in Defendant's brief as to the causal connection between the fall and the present disability. The only issue presented on appeal is whether the Commissioner could properly have found that the Petitioner is *totally* disabled.[3]

In filing his petition for further compensation, the claimant carries the bur-den of persuading the Commissioner by a fair preponderance of the evidence as to his right to compensation. E. g., Bowen v. Morin Brick Co., Me., 259 A.2d 41 (1968). A Petitioner with a partial physical disability seeking an award for total disability has the burden of proving inability to engage in any substantial remunerative employment [4] as a result of his industrial accident. Levesque v. Shorey, Me., 286 A.2d 606 (1972).

We have long noted that incapacity for work may result from a physical inability to work or a lack of opportunity to work due to the injury in question. Ray's Case, 122 Me. 108, 119 A. 191 (1922). Recently in Levesque v. Shorey, supra, we stated our definition of total incapacity:

> "The term 'total incapacity' means such incapacity for work that the employee is unable to perform any services, either because of his physical inability to perform in a medical and/or neurological sense or by reason of unavailability, in or near the community in which he lives, of the type of work commensurate with his limited capacity, and ability to perform services which are so limited in quality, dependability, or quantity that a reasonable stable market for them does not exist, will not detract from his status of total disability." 286 A.2d at 610–611.

In Bolduc v. Pioneer Plastics Corp., Me., 302 A.2d 577, 580 (1973) this Court enunciated the petitioner's burden.

> "To show entitlement to compensation for total incapacity, [the petitioner] . . . had the burden of proof and the duty to furnish evidence to the hear-

---

2. Although the Appellant appealed from the Commissioner's separate determination that Petitioner's leg is permanently impaired to the extent of 35% and his order of lump sum compensation thereon, this issue was not pursued in brief or oral argument and we treat it as waived, as Appellant doubtless intended it to be.

3. In oral argument Defendant's counsel suggested that the Commissioner's decree incorrectly recites certain testimony and that these errors taint and make unreliable his findings as to causation. As this issue was not raised in Defendant's brief, it is considered waived. A. E. Borden Co. v. Wurm, Me., 222 A.2d 150 (1966); State v. Campbell, Me., 314 A.2d 398 (1974).

4. That is, employment which is not "trivial occasional employment under rare conditions at small remuneration". *See* Levesque v. Shorey, Me., 286 A.2d 606, 610 (1972).

ing Commissioner to convince him by the fair preponderance of the evidence that he, the plaintiff, had used reasonable efforts to obtain *the kind of work which was within the tolerance of his physical condition* and that he had failed, either because employers would not hire people with such limitational capacity to do the type of work which was within the plaintiff's capacity, or because there was *no market in the area of the plaintiff's residence for the restricted work of which he was capable.*" (Emphasis added.)

The above quotations, reiterated in substance in Overlock v. Eastern Fine Paper, Inc., Me., 314 A.2d 56 (1974), present the law which the Commissioner was bound to apply in the case at hand.

The testimony supporting the Petitioner's claim of total disability can be fairly summarized in the following manner. The Petitioner has suffered substantial physical discomfort since the 1967 accident. Although he had been treated for various ailments for years prior to the accident, pain and edema have persisted in his leg since that time. The accident itself tore the quadriceps tendon of the right leg, requiring an operation to repair that tendon. However, phlebitis and edema followed, for which the Petitioner has received various treatments. The Petitioner still complains that his leg swells and aches whenever he walks or drives, and even when he sits unless he can elevate his leg "about as high as this desk". Only when Petitioner is in bed at night does the condition subside to a comfortable level. The Petitioner's physician's testimony was that the Petitioner could relieve his discomfort only by elevating the leg from time to time. Medical testimony indicated that the lower right leg is 30% to 35% permanently impaired due to post-phlebitic venous insufficiency and edema, and that it has suffered a 15% loss of flexion.

The Commissioner could have found that the Petitioner made many determined efforts at gainful employment. He said he worked three hours repairing an industrial machine for his brother but fell, injuring his back, and was unable to complete this temporary job. For three years he attempted lobstering, earning about $1300, $1500 and $500. He was able to do this for five or six hours a day, two or three days a week and only because his son or grandson would usually accompany him and do all the work except measuring and plugging the lobsters. On some occasions Petitioner would bait the baitline or run the hydraulic hauler. He was forced to discontinue this work because of the pain resulting in his leg, especially in rough weather. He purchased a truck and with the help of his wife and daughter attempted to sell shrimp at roadside, but found that he could not stand outside in cold weather because of the effect of the cold upon his leg. At the time of the latest hearing he was receiving public assistance and was also being given financial help by his relatives.

The Defendant does not dispute that at *the time of the Commissioner's decree* the Petitioner was unable to do the type of heavy work to which he had been accustomed and which he had attempted since his injury. The Defendant does assert to us that there was no evidence that Petitioner could not have performed available light work and that the Commissioner made no finding as to Petitioner's ability to do light work or as to the availability of such work within the Petitioner's capacity.

█ The situation presented by the Commissioner's decree *is* perplexing. This Petitioner had the duty to satisfy the Commissioner either that 1) his physical capacity was so limited that he would not be able to engage in *any* substantial remunerative employment which would be within his skills and other qualifications,[5] or 2) if

5. It appears axiomatic that the impact of injury upon individuals may vary somewhat

with the age, skill and training of the individual. A certain physical injury might

he had the physical capacity to do "light work", that he had used reasonable efforts to obtain the kind of work which was within the tolerance of his physical condition and the limits of his qualifications, and that his failure was due to employers' unwillingness to hire men in his condition or to the absence in his area of a reasonably stable market for such limited services. Overlock v. Eastern Fine Paper, Inc., Me., supra; Cote v. Central Tire Co., Me., 290 A.2d 368 (1972); Levesque v. Shorey, Me., supra.

The Commissioner's decree makes no mention of the necessity that the Petitioner should meet this duty. While the Commissioner found that Petitioner was "totally disabled" he made no specific findings as to the basic facts upon which that conclusion rested. Particularly wanting is any finding that the Petitioner was physically unable to do *any* substantial remunerative work or, that if he had *some* capacity, there was no work within his capacity available in his area.[6]

■ There was no testimony that Petitioner had sought "light work" and had been unable to obtain any within his capacity in his area (unless the Commissioner considered his attempt to sell shrimp at roadside to be such). However, we realize that in some cases the evidence as to physical disability may be of such a nature that a Commissioner can properly *infer* that an employee's physical limitations, considered in conjunction with his other qualificational limitations, are now such that he could not perform *any* substantial remunerative work. In such a case, a petitioner would have no duty to present evidence that he had sought "light work" and had failed to obtain any in his area. If the Commissioner drew such an inference here,[7] his decree fails to state the fact.

The Commissioner recited the testimony relating to causation extensively but he barely approached the single issue which is in dispute here, and then only in the following manner:

"Mr. Charles Foster, at all times, and in a credible manner held himself as disabled to work. *His attending physician felt he could do some work provided he was given an opportunity to rest with his leg elevated when the occasion demanded.*[8] The doctor also felt that the leg condition was due to the injury of April 19, 1967.

In view of the opinion of Dr. Gregory and in view of the respondent's medical evidence which was discredited we must find as a fact that when the claimant left work on April 19, 1968 he was totally disabled to work as a direct result of his accidental injury of April 19, 1967, which disability continued through these hearings." (Emphasis added.)

■ As the basis for the Commissioner's conclusion of total disability is unclear, we are not able to determine whether the Commissioner applied proper principles of law. The matter must be remanded to the Commission for clarification of the decree (and for further testimony if the Commission considers that it is necessary).

The entry will be:

Appeal sustained. Remanded to Industrial Accident Commission for further action consistent with this opinion. Ordered that an allowance of $350.00 to cover fees and expenses of counsel, plus cost of record, be paid by appellant to the appellee.

All Justices concurring.

WERNICK, J., did not sit.

---

result in total incapacity in an untrained, unskilled person (even though there was a favorable labor market) although it might result in only partial incapacity in the case of a person who possessed various skills and a broad work experience.

6. We pointed out in *Bolduc* and *Overlock* the Commissioner's duty to make specific find-

ings of basic facts which in his view of the evidence support his final order.

7. We intend no intimation that such an inference should or should not have been drawn.

8. We cannot be certain whether the Commissioner was or was not adopting the physician's opinion as a finding of fact.