571 P.2d 315 (1977)
AMERICAN METALS CLIMAX, INC., and State Compensation Insurance Fund, Petitioners,
v.
Tony E. CISNEROS and Industrial Commission of Colorado, Respondents.
No. 76-911.
Colorado Court of Appeals, Div. I.
August 4, 1977.
Rehearing Denied August 25, 1977.
Certiorari Granted November 15, 1977.
*316 R. S. Ferguson, James A. May, William J. Baum, Denver, for petitioners.
Edward J. Scheunemann, Denver, for respondent Tony E. Cisneros.
J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Timothy R. Arnold, Special Asst. Atty. Gen., Denver, for respondent Industrial Commission of Colorado.
BERMAN, Judge.
American Metals Climax, Inc., (Climax) and the State Compensation Insurance Fund, seek review of the award of workmen's compensation benefits for permanent partial disability to respondent under the Colorado Occupational Disease Disability Act (Act), § 8-60-101 et seq., C.R.S.1973.[1] We affirm.
Claimant was 45 years old at the time his claim was filed, and had worked in mining for most of his adult life, both as an underground miner and in other positions. He worked for Climax as an underground miner from 1963 until June 1972.
In June 1972, claimant suffered a work related injury to his arm. On July 15, 1972, while claimant was still incapacitated by that injury, the union of which claimant was a member negotiated a contract with *317 Climax for an increase in their wages to $5.33 per hour. When claimant returned to work in August 1972, he was assigned a job as a janitor outside of the mine. Claimant testified that he was removed from underground mining based on the recommendation of Dr. Wirz, Climax's medical director, who had informed him that he had silicosis. Had claimant been permitted to return to his former employment he would have received the increased pay under the newly negotiated contract. Claimant's rate of pay as a janitor was $4.42 per hour, or 17% lower than the rate of pay he would have received as a miner in August 1972.
The Industrial Commission ultimately found that "because of claimant's age, education, background, and past work experience, his affliction with silicosis arising out of and in the course of his employment and his resulting transfer to a lower paying job, the claimant has suffered a loss of earning capacity." And, it further found that claimant had suffered a permanent partial disability of 17% as a working unit, and awarded compensation accordingly.
On this review, petitioners assert that claimant was not disabled by silicosis within the meaning of § 8-60-102(6), C.R.S.1973, and that claimant had not suffered a loss of earning capacity by reason of the disease. We do not agree with either of these contentions.
Dr. Hurst, who presented the only medical evidence submitted, was of the opinion that claimant had silicosis resulting from his underground mining employment, but he felt that the disease alone was not "disabling." However, Dr. Hurst agreed that claimant should be removed from underground mining because a continued exposure to dust would be dangerous to his health, and that because of the silica deposits already in his lungs, he would be more susceptible to further damage to his health from continued exposure to dust. Moreover, Dr. Hurst agreed that the deposits of silica in claimant's lungs constituted a "physical infirmity" and a "physical disease," and it was the doctor's opinion that as a result of the silicosis, claimant would be foreclosed from employment as an underground miner with any company which required pre-employment physicals.
This medical testimony supports the Industrial Commission's finding that "claimant suffered an occupational disease [i. e., silicosis] in and through the course of his employment." Though the medical testimony indicated that claimant had only minimal silicosis, the fact that it had progressed to the point that it required claimant's removal from underground mining, supports the Commission's implied finding that claimant was indeed "disabled" by the disease within the meaning of § 8-60-102(6), C.R.S.1973. Thus, the instant case is unlike the situation presented in Romero v. Standard Metals Corp., 29 Colo.App. 455, 485 P.2d 927 (1971), where, although claimant had minimal silicosis, the testimony was "clear" that any physical disability claimant had was the result of noncompensable neurosis and that "the best method of treating his neurosis would require his return to his occupation as a miner in conjunction with psychiatric treatment, even though there was a possibility that the silicosis might become more pronounced." (emphasis added)
Here, claimant should not, and indeed could not, return to his former employment as an underground miner. And "[t]he law does not require, as a prerequisite to recovering compensation for partial disability due to a compensable occupational disease, that the ill employee continue to work until he becomes physically unable to do so." Globe Union, Inc. v. Baker, 310 A.2d 883 (Del.Super.Ct.1973), aff'd, 317 A.2d 26 (Del. Supr.).
However, the mere fact that one has suffered a physical injury, or has contracted a disease listed under the Act, does not mandate an award of compensation benefits. See Puffer Mercantile Co. v. Arellano, Colo., 546 P.2d 481 (1975). The test for determining a claimant's compensable status turns on industrial disability or loss of earning capacity; the inability, as the result of a work-connected injury or disease, "to perform or obtain work suitable to the *318 claimant's qualifications and training." 2 A. Larson, Workmen's Compensation Law § 57.00 (1976). See Byouk v. Industrial Commission, 106 Colo. 430, 105 P.2d 1087 (1940).
In determining the degree of a claimant's industrial disability, or loss of earning capacity, the Industrial Commission, by statute, must consider a claimant's "general physical condition and mental training, ability, former employment, and education . . . ." Section 8-60-114(7), C.R.S.1973; § 8-51-108(1)(b), C.R.S.1973, and must also consider the claimant's age and the availability of the type of work which he can do. Colorado Fuel & Iron Corp. v. Industrial Commission, 151 Colo. 18, 379 P.2d 153 (1962).
In the instant case, the Industrial Commission considered all the above factors upon which evidence was presented in determining claimant's degree of disability. And, under the particular facts present here, we find no error in the Commission's measuring claimant's industrial disability percentage by the 17% reduction in his pay when he returned to work in August 1972.
Claimant's principal employment has been in underground mining, and the inference is clear that what skills he may have were acquired in that trade. These factors, taken in conjunction with claimant's age and the fact that he is foreclosed from pursuing his former employment, support the Commission's conclusion that the percentage decrease in wages claimant incurred as a result of his disability was the best measure of his disability. Further, since there is no dispute that claimant would have received $5.33 per hour had he returned to underground mining in August 1972, the Industrial Commission was justified in computing his wage loss by the difference between that figure and the amount he was paid as a janitor. Impaired earning capacity as it relates to the kind of labor engaged in by an employee at the time he becomes disabled, while not the only factor which should be considered by the Industrial Commission, is a pertinent factor in the determination of the loss of earning capacity. Byouk v. Industrial Commission, supra.
Nor do we agree with petitioners' assertion that claimant was required to prove that he was "not capable of earning a wage in the general labor market, at least equal to that paid for underground mining at Climax." Here, claimant proved that because of his occupational disease he could no longer work as an underground miner, and thus the burden was upon petitioners to prove that other work was available to claimant in which he could earn wages comparable with those that he would have received as an underground miner. See United States Steel Corp. v. Workmen's Compensation Appeal Board, 10 Pa.Cmwlth. 67, 308 A.2d 200 (1973); Charnes v. Burk, 205 Tenn. 371, 326 S.W.2d 657 (1959). See also Globe Union, Inc. v. Baker, supra. Such evidence was not presented by petitioners. Accordingly, based upon the evidence before it, the Industrial Commission's use of claimant's wage loss as the best measure of his industrial disability did not constitute an abuse of discretion. See Tillman v. Capitol Hill Transfer & Storage Co., 165 Colo. 514, 440 P.2d 152 (1968); Byouk v. Industrial Commission, supra.
Order affirmed.
COYTE and RULAND, JJ., concur.
NOTES
[1] The Colorado Occupational Disease Disability Act as a separate entity has been repealed. Colo.Sess.Laws 1975, Ch. 71, § 62 at 311. Provisions applicable to occupational diseases are now contained in §§ 8-40-101 et seq., and 8-50-101 et seq., C.R.S.1973 (1976 Cum.Supp.).