Harold A. CROCKER

v.

EASTLAND WOOLEN MILL, INC. and/or Travelers Insurance Company.

Supreme Judicial Court of Maine.

Oct. 6, 1978.

Paine & Lynch by Martha J. Harris (orally), Bangor, for plaintiff.

Rudman, Winchell, Carter & Buckley by Michael P. Friedman (orally), John M. Wallach, Bangor, for defendants.

Before McKUSICK, C. J., and POMEROY, WERNICK, DELAHANTY, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

Employer Eastland Woolen Mill, Inc. appeals from a pro forma decree of the Superior Court affirming an order of the Industrial Accident Commission[1] dismissing employer's petition for review of incapacity and finding that the employee, Harold A. Crocker, is entitled to compensation for total incapacity for injuries stemming from a work-related accident. The employer argues that the commission erred in (1) finding as an ultimate fact a causal connection between Crocker's use of crutches following an accident in the course of employment and subsequent problems with his back and (2) holding that an employee only partially disabled in a medical sense is entitled to total compensation without a showing by the employee of efforts to find suitable employment. We sustain the appeal in part and remand for further proceedings.

On May 5, 1976, Harold A. Crocker, an employee of Eastland Woolen Mill, Inc.,[2] injured his foot in the course of his employment when knocked down by a bale of cloth. In June 1976 Crocker and the employer reached an agreement for payment of compensation for the foot injury. After the accident, Crocker wore a leg cast and

---

[1] The name of the Industrial Accident Commission was changed to Workers' Compensation Commission by P.L.1978, ch. 612.

[2] The parties stipulated at oral argument before the Law Court that "Eastern Woolen Mill, Inc.," the named party in the Law Court, is the same as "Striar Brothers Textile Mill," the party named by the employee in a petition for award of compensation and in the transcript of the hearings before the Industrial Accident Commission.

used crutches. Following the removal of the cast, Crocker experienced severe back pain which prevented him from engaging in manual labor after his foot had healed. In September 1976, the employer filed a petition for review of incapacity. At a subsequent hearing, Crocker maintained that his back problem was causally related to the treatment necessitated by the foot injury. The commission agreed, finding that Crocker was entitled to compensation for total incapacity.

## I.

### Sufficiency of Evidence of Causation

■ We reject the employer's first argument that the commission erred in finding that Crocker's back disability is causally related to the utilization of crutches following injury to his foot.[3] It is well established that "[t]he extent of incapacity from which an employee suffers is a question of fact," *Hamel v. Pizzagalli Corp.*, Me., 386 A.2d 741, 743 (1978), and that "[f]indings of fact by the Commission are conclusive if supported by competent evidence." *Id.* at 743. *Accord, Page v. General Electric Co.*, Me., 391 A.2d 303 (1978). Further, "[i]n a petition for review of incapacity, the employer bears the initial burden of showing that the employee has regained some work capacity." *McQuade v. Vahlsing, Inc.*, Me., 377 A.2d 469, 471 (1977).

The record of the hearing before the commission contains sufficient evidence of a causal link to support the commission's finding. Dr. Kimball, an orthopedic surgeon, testified that it was "likely" that the use of crutches following Crocker's foot injury aggravated a preexisting back condi-

tion. Crocker also testified that he had experienced no back pain prior to his foot injury and that the discomfort began shortly after the leg cast was removed. Finally, there is no evidence of any intervening trauma or accident that could have triggered the back pain.

It is true that Dr. McGinn, an orthopedic surgeon, testified that the use of crutches would be more likely to strengthen Crocker's back than aggravate the condition. Dr. McGinn's assessment clearly contradicts that of Dr. Kimball. But, as we have noted in the past, "[t]he Commission, as the factfinder, was entitled to resolve this factual issue based on its own judgment of the credibility of witnesses, and its own evaluation of the probabilities." *Landry v. Great Northern Paper Co.*, Me., 383 A.2d 655, 657 (1978). It was well within the province of the commission to attribute greater weight to Dr. Kimball's testimony.

## II.

### Employee's Burden to Show Evidence of Work Search

Under the firmly established "odd lot doctrine,"[4] an employee only partially disabled in the medical sense may still be treated as totally disabled for compensation purposes "by reason of unavailability, in or near the community in which he lives, of the type of work commensurate with this limited capacity, and ability to perform services which are so limited in quality, dependability, or quantity that a reasonable stable market for them does not exist . . . ." *Levesque v. Shorey*, Me., 286 A.2d 606, 610–11 (1972). Under the traditional rule, once an employer establishes

---

**3.** Although we have not had occasion to address the particular fact pattern presented by this case, it has long been recognized that the aggravation of a preexisting illness or defect by a work-related accident entitles an employee to compensation. *Barrett v. Herbert Engineering, Inc.*, Me., 371 A.2d 633 (1977); *Canning v. State Dept. of Transportation*, Me., 347 A.2d 605 (1975); *Bernier v. Coca-Cola Bottling Plants, Inc.*, Me., 250 A.2d 820 (1969). And, it is equally well established that an employer is liable for the aggravation of a work-related

injury which results from negligent medical treatment. *Crosby v. Grandview Nursing Home*, Me., 290 A.2d 375 (1972); *Richardson v. Robbins Lumber, Inc.*, Me., 379 A.2d 380, 383 (1977). From these cases, we can deduce that injuries resulting from treatment for a work-related accident are compensable, even if the treatment aggravated a condition that preexisted the accident. *See generally* 1 Larson, *Workmen's Compensation Law* § 13.11.

**4.** *See generally* 2 Larson, *supra* at § 57.51.

that an employee is only *partially* disabled, the burden shifts to the employee to show that he has made reasonable efforts to secure suitable employment:

> "The employee must come forward with evidence, if any there was, that he has engaged in a good faith effort to obtain work within the tolerance of his physical condition, and then he must demonstrate that he failed in his effort, either because employers in his community would not hire people with such a limited capacity to do the type of work within his tolerance, or because there was no reasonably stable market in his community for that restricted work of which he was capable."
> *Bowen v. Maplewood Packing Co.,* Me., 366 A.2d 1116, 1118–19 (1976).

*See also Theriault v. Walsh Constr. Co.,* Me., 389 A.2d 317 (1978); *Lancaster v. Cooper Industries,* Me., 387 A.2d 5 (1978); *Martel v. United States Gypsum Co.,* Me., 329 A.2d 392 (1974); *Bolduc v. Pioneer Plastics Corp.,* Me., 302 A.2d 577 (1973).

In the instant case, the employer established to the satisfaction of the commissioner that Crocker was only partially disabled and could engage in "light work" not requiring "lifting, bending, pulling, twisting and prolonged standing or sitting . . ." However, the commissioner granted Crocker total compensation *despite* his failure to show any work search. Instead, the commissioner noted that Crocker was 65 years of age, was unable to read or write, and had been employed as a millworker for 46 years, and concluded that ". . . Mr. Crocker's disability is of such a nature that this Commission infers that his physical limitation, considered in conjunction with his other qualificational limitations, are now such that he could not perform any substantial remunerative work."

In departing, from the traditional rule, the commissioner cited our decision in *Foster v. Bath Iron Works Corp.,* Me., 317 A.2d 11 (1974). In *Foster, supra,* the commissioner had awarded an employee total compensation for injuries sustained in a work-related accident but failed to specify the grounds for his finding. This court remanded the case to the commissioner for clarification. However, we stated *obiter dicta* that upon finding that the employee was partially disabled, a commissioner could, under certain circumstances, *infer* that the employee was entitled to total compensation *without* a showing by the employee of efforts to find suitable employment:

> "There was no testimony that Petitioner [employee] had sought 'light work' and had been unable to obtain any within his capacity in his area . . . . However, we realize that in some cases the evidence as to physical disability may be of such a nature that a Commissioner can properly *infer* that an employee's physical limitations, considered in conjunction with his other qualificational limitations, are now such that he could not perform *any* substantial remunerative work. In such a case, a petitioner would have no duty to present evidence that he had sought 'light work' and had failed to obtain any in his area." (Emphasis in original) *Id.* at 15.

The issue squarely presented by this appeal is whether the *Foster* dictum has modified the traditional rule which required a partially disabled employee seeking compensation for total incapacity to present evidence of a work search regardless of his particular qualifications and the individual commissioner's perception of the local job market.

We reject any exception to the traditional rule. In so doing, we recognize that *Foster* has been cited with approval in a subsequent case[5] and that a similar approach finds support in some other jurisdictions.[6]

---

5. In *Dailey v. Pinecap, Inc.,* Me., 321 A.2d 492 (1974), an employer appealed from a pro forma decree affirming the commission's denial of employer's petition for review of incapacity. Employer argued that the evidence was insufficient to support the commission's finding that the employee was totally disabled. We denied the appeal, stating that the commission could well have found that the employer "had failed to carry its burden to establish that the employee's incapacity for work had diminished from its previous character of total disablement." *Id.* at 495. Although we cited the *Foster* dictum, upon which the commission relied in the instant case, our decision in *Dailey*

■ The prime advantage of allowing the commissioner to infer total disability without a showing by the employee of attempts to find suitable employment is that it excuses the partially disabled employee from performing a possibly useless act in cases where the combination of the employee's physical limitations and the conditions of the local job market render the employee's skills clearly unmarketable. But it is the very difficulty of determining when an employee's skills are "clearly unmarketable" that reveals the wisdom of the traditional formulation. The *Foster* approach substitutes the commissioner's subjective assessment of the local job market for the objective results of the employee's work search. Since the factfinder's personal knowledge of local employment conditions would not appear in the record, the commissioner's finding would be, for all practical purposes, nonreviewable.[7] In contrast, the traditional formulation provides an objective evidentiary basis for the commissioner's finding of total incapacity. Actual rejection by the market is the best test of unmarketability.[8]

Equally important, the objective test of employability places the burden of coming forward with evidence on the party, who, as a practical matter, can more easily and directly obtain and present that evidence. In contrast, the *Foster* dictum would place on the employer the difficult, if not impossible, task of proving a negative; namely, that employers in the partially disabled employee's community do hire people with such a limited capacity to do the type of work within his tolerance and that there is a reasonable stable market in that community for the restricted work of which he is capable. In the conduct of the adversary compensation proceeding, it is more practical to assign the burden of coming forward with evidence to the party who can satisfy that burden by simply showing the lack of success of a good faith job search.

Finally, it should be noted that the *Foster* approach would introduce an element of procedural uncertainty into the compensa-

in no way depended upon allowing the commission to use the inference authorized by *Foster.* In *Dailey,* unlike the present case, the employer failed to establish that the employee was only partially disabled. Consequently, we had no occasion to reach the question of whether the commission could simply infer that an employee only partially disabled in the medical sense is totally disabled for compensation purposes without a showing of efforts to find work.

Further, it should be noted that *Foster* is also distinguishable from the instant case. Although the employee in *Foster* failed to submit proof of efforts to find suitable "light work," the record did reveal that he attempted several self-employment ventures, including lobstering and selling shrimp by the roadside. In the instant case, Crocker made no such showing.

6. In a number of states, the *employer* has the burden of showing the availability of employment within the employee's physical limitations. *See Ham v. Chrysler Corp.,* Del., 231 A.2d 258 (1967); *Barbato v. Alsan Masonry & Concrete, Inc.,* 64 N.J. 514, 318 A.2d 1 (1974); *Kaplan v. Lowry Elec. Co., Inc.,* Fla., 293 So.2d 348 (1974); *United States Steel Corp. v. Workmen's Comp. App. Bd.,* 10 Pa.Cmwlth. 67, 308 A.2d 200 (1973). In Oregon, the burden of showing employability shifts from the employee to the employer if the employee makes a prima facie case of unmarketability. *Deaton v. State Accident Ins. Fund,* 13 Or.App. 298, 509

P.2d 1215 (1973). *See generally* 2 Larson, *supra* at § 57.61.

7. The *Foster* approach could result in two different commissioners reaching opposite results on the same record. The decision of this important issue of employability might well depend upon the "luck of the draw," namely, upon which commissioner, with a particular subjective view of the job market in the employee's home area, happened to hear the compensation matter. The objective test applied by the traditional formulation avoids such inconsistencies, and also relieves the commissioners of the difficult task of making what are essentially fact findings without the aid of any record evidence.

8. The work search requirement need not be unduly burdensome. Under the traditional rule, the employee need only present evidence of a "reasonable" search for employment. What is "reasonable" depends upon the particular qualificational limitations of the employee and the conditions of the local job market. For example, in the instant case, the commissioner could well find that a single visit to the state employment office satisfied the requirement. In other cases where chances of employment appear to be greater, a more extensive work search may be required.

tion proceedings. Until the commissioner determined whether the evidence supported an "inference" of unmarketability, neither party would know whether the employer or the employee would be required to present evidence on this critical issue. Consequently, prior to trial both parties would have to engage in time-consuming and costly efforts to prepare to present evidence on the issue. In contrast, the traditional formulation provides a clear directive for counsel: Whenever an employee has residual work capacity, he is entitled to compensation for total incapacity only if he shows that he has made a reasonable search for a job and has been unsuccessful.

In the instant case, Crocker failed to make the required showing. However, since Crocker may have relied upon the *Foster* dictum in not undertaking a work search, we remand to the commission for further proceedings which may include the taking of testimony regarding Crocker's unmarketability after he has had sufficient opportunity to search for employment.

Accordingly, the entry is:

Appeal sustained;

Pro forma decree of the Superior Court vacated;

Remanded to the Workers' Compensation Commission for further proceedings consistent with this opinion; and

It is further ordered that the employer pay to the employee an allowance of $550 for his counsel fees, plus his reasonable out-of-pocket expenses for this appeal.

ARCHIBALD, J., did not sit.