Daniel **HAZELTON**

v.

**ROBERGE ROOFING**

and

**Liberty Mutual Insurance Company.**

Supreme Judicial Court of Maine.

Argued March 6, 1980.
Decided May 22, 1980.

Jerome B. Goldsmith, Bangor, orally, for plaintiff.

Rudman, Winchell, Carter & Buckley, Michael P. Friedman, William S. Wilson, Jr., Bangor, orally, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY and GLASSMAN, JJ.

GLASSMAN, Justice.

Daniel Hazelton appeals from a pro forma decree entered in the Superior Court, Penobscot County, purporting to approve a decision of the Workers' Compensation Commission awarding Hazelton $29.99 per week on a petition for further compensation. This award was based on a finding that Hazelton is and has been forty percent disabled as a result of an injury sustained while employed by Roberge Roofing. We vacate the pro forma decree.

■ Before reaching the merits of the appeal, we must note an inconsistency between the decision of the Workers' Compensation Commission and the pro forma decree of the Superior Court. The Commission's decision, dated August 9, 1979, states:

It is Ordered that compensation be paid for partial incapacity at the rate of Twenty Nine Dollars and Ninety Nine Cents ($29.99) per week from September 11, 1978 to the date of this Decree and to continue thereafter in accordance with the provisions of the Act, subject to annual statutory adjustment . . . .

The pertinent part of the Superior Court pro forma decree, which was dated August 29, 1979, states:

NOW THEREFORE, it is ORDERED, ADJUDGED and DECREED that the said decision of the Workers' Compensation Commission is hereby approved in full and that the Defendant, Liberty Mutual, pay said Daniel Hazelton Workmen's Compensation benefits as stated in said decision as follows:

"Compensation for partial disability at the rate of $29.99 a week is hereby ordered from the date of this decree until it is modified."

This obvious inconsistency would alone require that we vacate the pro forma decree.

The facts adduced at the hearing before the Workers' Compensation Commissioner were that on August 23, 1978, while working as a roofer for Roberge Roofing, Hazelton sustained an injury to his right knee when a hoist fell knocking him over the edge of the roof and pinning his knee between the roof and the hoist. Dr. Adams saw Hazelton on the day of injury and diagnosed a severe contusion. Although a follow-up visit with Dr. Adams was scheduled for August 30, 1978, Hazelton did not keep the appointment. He was out of work for approximately two weeks and then returned to work for two weeks. Hazelton testified he could not do the work because

his leg was too sore and swollen and he could not straighten it or walk on it. Following the two weeks of work, Hazelton ceased working. He received no compensation for the first two weeks he was out of work.

■ In October, 1978, through counsel, Hazelton filed a petition for compensation with the Workers' Compensation Commission. In January of 1979, Hazelton received a message that he could pick up a check for compensation at the office of his employer, Roberge Roofing. He testified that he could not read and that a document was presented to him which he was told he had to sign in order to secure his compensation check. He signed the document presented to him which was apparently a "closed-end agreement" for the period of August 24, 1978 to September 10, 1978.[1] No petition under 39 M.R.S.A. § 102 has ever been filed to set aside the agreement, nor did the Commission address the issue in its decision.[2]

In February, 1979, Hazelton filed a petition for further compensation. On March 5, 1979, he again saw Dr. Adams. An arthrogram was performed on March 12, 1979 which revealed that the anterior horn of the medial meniscus was torn off its attachment to the rim of the inside of the right knee joint. The cartilage was removed in a surgical procedure performed April 12, 1979. Hazelton was in the hospital from April 11 to April 18, 1979. The hearing before the Commission was held on May 16, 1979, at which time Dr. Adams testified that Hazelton was unable to do any work

because of the need for rehabilitation and that he would have to see Hazelton again before evaluating his work capacity or offering any opinion as to his work capacity.

On August 9, 1979, the Commission issued its decision finding Hazelton forty percent disabled as of September 11, 1978. It further found that Hazelton had not used reasonable efforts to obtain employment commensurate with his physical limitations. No request for findings of fact and conclusions of law pursuant to 39 M.R.S.A. § 99 was ever made.

The Commissioner awarded compensation for partial incapacity commencing September 11, 1978. In order to properly analyze the propriety of this award, we must consider two separate time periods: 1) from September 11, 1978, the day after the period covered by the closed-end agreement, to April 10, 1979, the day before Hazelton entered the hospital, and 2) from April 11, 1979 to the future.

I

■ There can be no legitimate challenge to the Commissioner's finding of partial incapacity for the period from September 11, 1978 to and including April 10, 1979. The evidence fully supports that finding. Even though a worker may have partial work capacity in a medical sense, for compensation purposes he may be considered totally incapacitated " 'by reason of unavailability, in or near the community in which he lives, of the type of work commensurate with his limited capacity, and ability

1. It is not clear whether this agreement was presented to Hazelton by his employer or the employer's insurance carrier. It is clear from Hazelton's testimony that this agreement was presented without the knowledge or consent of the claimant's attorney of record in the then-pending proceeding before the Commission. If the events were as described in Hazelton's testimony, we condemn as totally improper the negotiation and execution of a settlement agreement with a represented claimant without the participation of the claimant's counsel. There is nothing to suggest that counsel representing the employer and the carrier before this Court had knowledge of or participated in the impropriety.

2. 39 M.R.S.A. § 102 provides:

Upon the petition of either party at any time the commission may annul any agreement which has been approved by the commission provided it finds that such agreement was entered into through mistake of fact by said petitioner or through fraud. Except in the case of fraud upon his part, an employee shall not be barred by any time limit from filing a proper petition to have the matters covered by such agreement determined in accordance with this Act as though the agreement had not been approved.

to perform services which are so limited in quality, dependability, or quantity that a reasonable stable market for them does not exist.'" *Bowen v. Maplewood Packing Co.*, Me., 366 A.2d 1116, 1118 (1976), *quoting Levesque v. Shorey*, Me., 286 A.2d 606, 610–11 (1972). In *Crocker v. Eastland Woolen Mill, Inc.*, Me., 392 A.2d 32, 35 (1978), we rejected any exception to the traditional rule requiring a partially disabled worker seeking compensation for total incapacity to present evidence of a reasonable work search. Because of apparent misunderstanding of our holding in *Crocker*, we deem it necessary to clarify that holding. The reasonableness of a partially incapacitated worker's search for employment is made up of two elements: first, the reasonableness of his search in light of the local job market, and second, the reasonableness of the search in light of the incapacitated worker's disability. Thus, whatever the condition of the job market, a partially incapacitated worker may be deemed totally incapacitated if because of his partial incapacity he is immobile or otherwise unable to search for employment by normal methods. Furthermore, the nature of the employee's partial incapacity may be such that, as we expressly noted in *Crocker, supra* at 36 n. 8, a single visit to a state employment office may be sufficient to constitute a reasonable work search.

In the instant case, the worker testified that he was unable to conduct a work search because the pain in his leg made it difficult for him to get around. Moreover, he testified that he did on one occasion visit the state employment office. Because of the failure to request specific findings of fact and conclusions of law, we are unable to tell whether the Commissioner's conclusion that Hazelton had failed to make a reasonable work search was based upon a misunderstanding of our holding in *Crocker* or upon a factual finding that in light of the worker's partial capacity he had failed to make a reasonable work search. Absent specific findings of fact, this Court must resolve all questions of fact in favor of the Commissioner's decision and must sustain that decision unless the record fails

to disclose any reasonable basis for it. *Sutherland v. Pepsi-Cola Bottling Co.*, Me., 402 A.2d 50, 52 (1979). The burden of proving that there is no tenable theory of the evidence to support the Commissioner's conclusions is on the moving party. *Canning v. State Department of Transportation*, Me., 347 A.2d 605, 608 (1975). For these reasons, we must uphold the Commissioner's award of compensation for only partial incapacity for the period of September 11, 1978 through April 10, 1979.

II

When we consider the period commencing April 11, 1979, the date upon which the worker entered the hospital, the problem is somewhat different. The employer concedes that the worker is entitled to total incapacity for the period commencing April 11, 1979 through May 16, 1979, the date upon which the hearing was held before the Commission. This concession is made because Dr. Adams unequivocally testified that during this period Hazelton had no work capacity. Dr. Adams also testified that he would not want to change his evaluation as to no work capacity until after he had an opportunity to again see Mr. Hazelton and evaluate him. Thus, the only evidence in the record was that at the time of the hearing the worker had no work capacity and that the doctor was unwilling to project what his work capacity might be in the future until such time as he had an opportunity to examine and evaluate him. Under such circumstances, there is no support in the record whatsoever for an award of only partial incapacity.

The entry is:

Appeal denied in part and sustained in part.

Pro forma decree of the Superior Court vacated.

Case remanded to the Superior Court for remand to the Workers' Compensation Commission with directions to award forty percent partial incapacity from September 11, 1978 to and including April 10, 1979 and total incapacity from April 11, 1979 to con-

tinue thereafter in accordance with the provisions of the Act, subject to annual statutory adjustment.

It is ordered that the employer pay to the employee an allowance of $550 for his counsel fees plus his reasonable out-of-pocket expenses for this appeal.

All concurring.