Charles R. **BRUTON**

v.

**CITY OF BATH and Home Indemnity Co.**

Supreme Judicial Court of Maine.

Argued May 13, 1981.

Decided July 15, 1981.

McTeague, Higbee & Tierney, Jonathan W. Reitman (orally), Brunswick, for plaintiff.

Norman & Hanson, Theodore H. Kirchner (orally), Robert F. Hanson, Portland, for defendants.

Before McKUSICK, C. J., and WERNICK, NICHOLS, ROBERTS and CARTER, JJ.

NICHOLS, Justice.

Central to this appeal is the ever difficult question as to whether a heart attack may entitle the victim to an award of compensation under our Workers' Compensation Act.

Here the worker, Charles R. Bruton, appeals from a *pro forma* judgment of the Superior Court (Sagadahoc County) affirming a decision of the Workers' Compensation Commission which denied his petition for award of compensation on the ground that his injury did not arise out of his employment. The Commission found as a fact that the injury was not caused by a work-related incident.

We affirm the judgment below.

In February, 1979, Charles R. Bruton, Chief of Police in Bath, was asked by the City Manager to take color slides illustrating the severe traffic congestion in late afternoon caused by the termination of the first shift at the local shipbuilding firm. These pictures were to be used by the City in its effort to obtain federal funding for construction of a bypass to relieve this congestion. On February 22, while photographing the rush hour traffic, which Chief Bruton described as "extremely busy and dangerous," he experienced a "burning type of pain" in the center of his chest.

Four days later, following confrontation with a distraught woman who had received a parking ticket, Chief Bruton again felt the same pain in the center of his chest. He testified that as a result of this altercation he was "wound up" and that it was "pretty exasperating to deal with that type of situation."

On March 1, 1979, the date of the injury for which compensation was sought in the proceeding below, the City Manager asked Chief Bruton to take additional color slides and develop them that same evening so they would be available for city officials to take to Washington, D. C., the next morning. Dressed in full uniform Bruton arrived at the subject intersection and began taking pictures when the first shift ended. He found it "frustrating" and "exasperat-

ing" to observe the overload of vehicles as well as to note several traffic violations which he could do nothing about. Within a few minutes he again felt the familiar burning sensation return to his chest, accompanied by back pain not experienced before. After taking a few more pictures, Chief Bruton walked back to the police station. Realizing that the pain was increasing, he requested an ambulance take him to Bath Memorial Hospital where he was diagnosed as having sustained a myocardial infarction. Bruton was totally disabled from work from March 2, 1979, to May 29, 1979.

In denying the petition for award of compensation, the Commissioner concluded:

> Having heard all of the evidence, I am not persuaded that this employee's injury resulted from unusual emotional or physical stress. Accordingly, I find as a fact and conclude as a matter of law that the employee has failed in his burden of demonstrating that this injury arose out of his employment with the City of Bath
> . . . .

On appeal, Bruton does not dispute the factual findings of the Commissioner. Rather, he challenges the correctness of the Commissioner's conclusions; he argues that the Commissioner applied an erroneous rule of law by *requiring* proof that his work activity on the day he sustained his myocardial infarction was "unusual."

We disagree.

Our Workers' Compensation Act requires that for an injury to be compensable it must both "arise out of" and be sustained "in the course of" the claimant's employment. 39 M.R.S.A. § 51 (1978). If one of these requirements is not met, the injury is

non-compensable. *Blackman v. Harris Baking Co.*, Me., 407 A.2d 21, 23 (1979). In the case before us the Commissioner found that Chief Bruton sustained his injury in the course of his employment but that the myocardial infarction did not arise out of his employment. Both requirements not being satisfied, the petition for award of compensation was denied.

■ We have defined the statutory words "arising out of" as meaning that there must exist "some causal connection between the conditions under which the employee worked and the injury which arose, or that the injury, in some proximate way, had its origin, its source, its cause in the employment." *Barrett v. Herbert Engineering, Inc.*, Me., 371 A.2d 633, 636 (1977), citing *Westman's Case*, 118 Me. 133, 106 A. 532 (1919). In *McLaren v. Webber Hospital Association*, Me., 386 A.2d 734, 736 (1978), we indicated that an injury arises out of employment "where a proximate causal connection exists between the circumstances of employment and the injury."

■ The determination of causal connection is, of course, a question of fact. *Rowe v. Bath Iron Works Corp.*, Me., 428 A.2d 71, 73 (1981); *Parent v. Great Northern Paper Co.*, Me., 424 A.2d 1099, 1101 (1981). As such, it is our duty to sustain the Commissioner's findings if supported by competent evidence. *Mortimer v. Harry C. Crooker & Sons, Inc.*, Me., 423 A.2d 248, 250 (1980). This we must do even if, as in the instant case, there is other evidence in the record which would support a different conclusion. *St. Pierre v. Morin Brick Co.*, Me., 427 A.2d 492, 494 (1981); *Dunton v. Eastern Fine Paper Co.*, Me., 423 A.2d 512, 518 (1980).[1]

1. We recognize that the difficulty of determining compensability of heart attacks is considered one of the most prolific and troublesome problems in workers' compensation law. Professor Larson has summarized the problem:

> Given the dominant position of heart disease as a source of disability and death, the extent to which workmen's compensation assumes both medical and income maintenance responsibility for the victims of heart disease naturally has a heavy bearing on the comprehensiveness, cost, and ultimate direction of

the system. Obviously if the heart attack is a genuinely work-connected injury, to deny compensation benefits would be a gross violation of the legislative purpose and of the workman's rights. It is equally obvious that, . . ., compensation cannot be paid for every heart attack which happens to make its appearance during working hours. Thus, the task of the courts, . . ., has been to draw the line between the legitimate application of the Act and the indiscriminate distribution of compensation funds to almost all employed

■ The testimony of Bernard Givertz, M. D., a cardiologist, constituted sufficient competent evidence to support the Commissioner's factual finding on the issue of causal connection. Dr. Givertz testified that Chief Bruton had a very strong family history of coronary disease. Chief Bruton had an extended smoking history of approximately 20 years, a history of documented hypertension, and was considerably overweight in 1972. Dr. Givertz indicated that with a hypothetical person having these "risk factors," it would not be necessary for physical exertion or emotional upset to occur to produce a myocardial infarction. In fact, such could occur, the cardiologist testified, "at rest, ... during one's sleep; ... [or] at any time of the day or night." When questioned as to whether Chief Bruton's work activity on March 1, 1979 was the cause of his myocardial infarction, Dr. Givertz stated:

A. [I]t would be my opinion that the work of that particular day was not a significant contributing factor in his heart attack on the statistical basis. This is to say the other factors, I would think the other factors which I mentioned earlier—the risk factors, plus the natural progression of the disease would be statistically more significant factors in this case than the chores he performed on that particular day.

Q. Could the work activity on March 1, 1979, have been a factor?

A. · Yes.

Q. In your opinion, was the work activity of March 1, 1979, more probably than not a factor? ...

A. No.

The Commissioner was free to accept this testimony and to reject other testimony by Lawrence Baker, M. D., an internist, who

testified that the emotional stresses endured by Chief Bruton on March 1, 1979 "precipitated the acute myocardial infarction."

The employee has failed to meet his burden on appeal of proving that there was no rational basis for the Commissioner's conclusions. *Hazelton v. Roberge Roofing*, Me., 414 A.2d 900, 903 (1980).

Here the Commissioner's factual findings on the issue of causal connection are fully supported by the record. It was Dr. Givertz's medical evaluation that the employee's "risk factors" together with his pre-existing coronary heart disease were causally responsible for the myocardial infarction. The Commissioner's findings must be upheld even in the face of other evidence in the record which might have supported a different result. *McKenzie v. C. F. Hathaway Co.*, Me., 415 A.2d 252, 253 (1980); *Dailey v. Pinecap, Inc.*, Me., 321 A.2d 492, 495 (1974).

■ Furthermore, we must reject Chief Bruton's contention that the Commissioner required a showing of unusual stress or unusual work activity. The Commissioner properly framed the issue as "whether or not that injury arose out of the employee's work activity."

We interpret the Commissioner's analysis in terms of "unusual emotional or physical stress" to be an explanation of his choice between the two conflicting medical opinions. Dr. Baker's opinion that the myocardial infarction was work-related was admittedly premised on Chief Bruton's assertion that his work activities on the day in question had been emotionally upsetting. The Commissioner found as a fact that the Chief's work activities were not unusually stressful or emotional, and that finding removed the basis for Dr. Baker's opinion.

heart victims. A. Larson, *The "Heart Cases" in Workmen's Compensation: An Analysis and Suggested Solution*, 65 Mich.L.Rev. 441, 441 (1967).

In our effort in the past to balance the rights of both employers and employees in heart attack cases, we have consistently applied the above standards of review when considering the nex-

us between the injury and the employment. *See, e. g., Turner v. Kennebec River Pulp & Paper Co.*, Me., 359 A.2d 304 (1976); *Canning v. State Department of Transportation*, Me., 347 A.2d 605 (1975); *Severance v. State Department of Transportation*, Me., 324 A.2d 314 (1974).

That, in turn, led the Commissioner to accept Dr. Givertz's opinion that the heart attack resulted from the natural progression of Chief Bruton's coronary disease and not from his work activity. The Commissioner did not, however, require a showing of unusualness as a matter of law.

In sum, we cannot say, therefore, that the Commissioner committed an error of law as argued by Chief Bruton. *See Brawn v. St. Regis Paper Co.*, Me., 430 A.2d 843, 846 (1981). On the contrary, viewing the decree as a whole, we find that the Commissioner was simply presented with a choice between two conflicting expert opinions on the factual question of causation. His factual finding cannot be disturbed on appeal.

The entry, therefore, is:

Appeal denied.

Judgment affirmed.

It is ordered that the employer pay to the employee an allowance of $550.00 for his counsel fees plus his reasonable out-of-pocket expenses for this appeal.

All concurring.