**CHRYSLER CORPORATION, Appellant-Employer,**

v.

**Grover R. WILLIAMS, Appellee-Employee.**

Superior Court of Delaware,
New Castle.

Sept. 27, 1971.

Carl Schnee, Wilmington, for appellant.

Oliver V. Suddard, Wilmington, for appellee.

STIFTEL, President Judge.

On September 16, 1966, Claimant, Grover R. Williams, suffered injuries to his right leg during the course of his employment with Chrysler Corporation, Newark, Delaware, when he was struck by several power steering chunks while he was in a prone position. An agreement for total disability, under Title 19 Del.Code § 2324, was approved by the Industrial Accident Board on September 26, 1966, and on March 31, 1970, Claimant filed with the Board a petition seeking a scheduled permanent disability award under 19 Del.Code § 2326.* The only issue for decision before the Board was the degree of permanent disability to Claimant's right leg.

The controversy centers around the nature of the testimony of Claimant's two expert witnesses—Dr. Strange and Dr. Bailey.

Dr. Strange, on cross-examination, testified that Claimant had a 60 to 70 percent permanent loss of use of his right leg, which took into consideration the nature of Claimant's employment. Dr. Strange continued by saying that his disability percentage figure weighed:

"* * * his ability to be employed, his educational background, the kind of work he had always done, etc. * * *" Redirect T. p. 41.

* 19 Del.Code § 2326 reads, in pertinent part as follows:
  "Compensation for certain permanent injuries
  "(a) For all permanent injuries of the following classes, the compensation to be paid regardless of the earning power of the injured employee after the injury shall be as follows:
  \*　　\*　　\*　　\*　　\*
  "For loss of a leg, 66⅔ percent of wages during 250 weeks;

Dr. Strange noted that if Grover R. Williams was a lineman or bridgeworker, he would have a 100% disability, even though his physical impairment would actually be 25 to 30 percent. T. 37, 41. Physically, he said,

"all legs that are injured have the same amount of impairment, assuming they have the same amount of injury." T. 38.

Dr. Bailey said there was a 40% actual physical disability to the right leg but a 65% disability if earning capacity was considered. Essentially, both doctors testified similarly.

The Board awarded 60% loss of use of right leg, explaining that the Board "should not consider impairment in isolation * *" because "It is physically impossible to consider impairment alone and divorced from the patient as the employer" advocated. The Board further said:

"* * * The Board believes a percentage disability rating given by a medical expert must be related to the individual employee who has the injury in question. This may result in a higher percentage of disability for an injury, when it is applied to a worker in the manual labor field than for a worker pursuing purely abstract or intellectual endeavors. This we believe to be the proper method of determining the percentage of permanent partial disability under Section 2326."

\*　　　\*　　　\*　　　\*　　　\*

"(d) In all other cases of permanent injury of the classes specified in subsection (a) of this section, or when the usefulness of a member or any physical function is permanently impaired, the compensation shall bear such relation to the number of weeks stated in the schedule set forth in subsection (a) of this section as the disabilities bear to those produced by the injury named in the schedule."

The Board did not seem to be troubled by the introductory language in Section 2326(a), which says that the compensation for permanent injury is to be paid "regardless of the earning power of the injured employee"; nor was it troubled by the language of Alloy Surfaces Co. v. Cicamore, Del.Supr., 221 A.2d 480, 484 (1966), where it is said that "earning capacity is not a matter for consideration under § 2326. Its significance applied only to the two preceding sections which are specifically designed to encompass that loss." See, also, Ernest Di Sabatino & Sons, Inc. v. Apostolico, Del.Supr., 269 A. 2d 552, 553 (1970).

■ The term "earning capacity" and the term "earning power", as used in the Act, are synonymous; they both mean earning ability, and include for consideration many factors such as Claimant's age, education, general background, occupational and general experience, the nature of the work performable with the physical impairment, the availability of such work and so on. See Ruddy v. I. D. Griffith & Co., Del.Supr., 237 A.2d 700, 703, 704 (1968), and Ham v. Chrysler Corporation, Del.Supr., 231 A.2d 258, 261 (1967).

■ The Board accepted the testimony of the doctors which took into consideration factors associated with loss of "earning power" forbidden by the introductory language of § 2326. This was error. Under § 2326, the Board is limited to considering the percentage of physical and functional disability suffered by Claimant unrelated to earning power. There is no testimony in the record that supports the percentage figure adopted by the Board without the testimony including a consideration of earning power of Claimant.

Matter remanded to the Board for reconsideration of the percentage loss.

It is so ordered.