**GLOBE UNION, INC., Appellant-Employer,**

v.

**Charles BAKER et al., Appellees-Employees.**

Superior Court of Delaware,
New Castle.

Aug. 23, 1973.

Carl Schnee, Jeffrey S. Goddess, of Tybout, Redfearn & Schnee, Wilmington, for appellant-employer.

Harvey B. Rubenstein, Wilmington, for appellees.

## OPINION

CHRISTIE, Judge.

Globe Union, Inc., the employer, brings this case before the Court on appeal from a decision by the Industrial Accident Board which granted partial disability benefits to the eleven claimants. The award is attacked on the following grounds: (1) that there was insufficient evidence to support the finding that the claimants had suffered an occupational disease; (2) even if the claimants did in fact contract an occupational disease, there was no resulting disability suffered by any of the claimants; and (3) that there was insufficient evidence to support the findings of the Board as to the duration and extent of any partial disability.

The claimants alleged that they had contracted lead poisoning arising out of and in the course of their employment with Globe Union, a manufacturer of automobile batteries. The departments in which the claimants had worked are high lead areas involving the processes of element burning, high-voltage welding, pasting, and grid

casting. These processes require working with lead in its dry, wet, or molten forms.

In their petitions for compensation, filed with the Industrial Accident Board between March 10, 1972, and August 29, 1972, the claimants alleged that they were transferred to departments with low lead exposure as a result of their having contracted lead poisoning.

According to their petitions the claimants suffered a loss of wages because of these new work assignments. Each of the claimants sought partial disability benefits for the period during which he received lower wages. Inasmuch as all of the cases involved virtually the same factual and legal issues, the cases were consolidated.

A hearing was held on December 7, 1972, and a majority of the Board decided that each of the claimants had suffered a compensable occupational disease and was entitled to partial disability benefits under the provisions of 19 Del.C. § 2325.

The employer contends in its first argument that there was no competent evidence to support the finding of the Board that the claimants had suffered an occupational disease, to wit, chronic lead poisoning.

The record indicates that the departments in which the claimants had worked were inadequately ventilated high lead areas. The claimants, therefore, were continually exposed to lead dust in the air prior to being transferred to low lead areas. Testifying as to the symptoms which they had had while working in the high lead areas, the claimants stated that, among other things, they had experienced loss of appetite, constipation, tiredness, irritability, and aches and cramps.

The record also shows that blood samples taken from the claimants while they were working in the high lead areas indicated high blood lead levels in excess of 80 micrograms per 100 grams of blood. There was also evidence that some of the claimants suffered from anemia as well.

A medical expert testifying on behalf of the claimants defined "chronic" as referring to "a long outstanding exposure to a material which is potentially toxic;" he defined "lead poisoning" as an excess amount of lead in various body tissues, caused by high lead exposure and manifested by certain symptoms. Stating that the blood lead level was "the best tool for diagnosing lead poisoning," this expert testified that on the basis of the laboratory test results indicating high blood lead levels, the working conditions in the high lead areas in which the claimants had worked, and the symptoms described by the claimants, it was "reasonably probable" that the claimants had contracted chronic lead poisoning.

■ The function of this Court on appeal from the Industrial Accident Board is to determine whether or not there was substantial evidence to support the findings of the Board. This is generally a question of credibility and the weight to be given to the testimony of each of the witnesses. Air Mod Corporation v. Newton, Del. Supr., 215 A.2d 434 (1965).

The employer argues that there was no foundation upon which the claimants' medical expert could have based his opinion that the claimants were probably suffering from lead poisoning at the time of their transfer.

■ The Board, however, saw and heard all of the witnesses. As chronic lead poisoning is a disease that occurs as a result of exposure to lead over a period of time, and as the symptoms did emerge while the claimants were working in inadequately ventilated high lead areas, it is the Court's opinion that evidence as to these factors, together with evidence of high blood lead levels shortly before each of the claimants was transferred, constituted substantial evidence sufficient to support the finding of the Board. Therefore, the finding of an occupational disease will not be set aside.

In its second argument, Globe Union contends that the loss of wages suffered by the claimants following their transfer to the low lead areas did not constitute proof of a partial disability.

The Board found that the claimants had suffered a partial disability within the meaning of 19 Del.C. § 2325, which provides for compensation for such disability in the following terms:

"For injuries resulting in partial disability for work . . . the compensation to be paid shall be 66⅔ percent of the difference between the wages received by the injured employee before the injury and the earning power of the employee thereafter. . . ."

A compensable occupational disease is included within the meaning of the term "injury." 19 Del.C. § 2301. The claimants are, therefore, entitled to compensation under the above quoted provisions of 19 Del. C. § 2325 if they have shown that their disease amounted to a compensable occupational disease resulting in partial disability.

A compensable occupational disease is one that "[arises] out of and in the course of employment. . . ." 19 Del.C. § 2301. This definition was amplified in the case of Air Mod Corporation v. Newton, Del. Supr., 215 A.2d 434, 442 (1965):

"[A] compensable occupational disease, within the meaning of our Act, is one resulting from the peculiar nature of the employment, i. e., from working conditions which produce the disease as a natural incident of the particular occupation, attaching to that occupation a hazard different from, and in excess of, the hazards attending employment in general."

■ In the case at bar, the Board found that the claimants had suffered a compensable occupational disease, and it is the Court's opinion that this finding was supported by substantial evidence.

The question to be resolved, therefore, is whether or not the Board erred as a matter of law in ruling that the claimants had suffered a partial disability, within the meaning of 19 Del.C. § 2325, as a result of their compensable occupational disease.

■ The term "partial disability" is not defined in our Workmen's Compensation Act. By implication, however, the term refers to that period of time during which an injured employee suffers a partial loss of wages as a result of his injury. Globe Union asserts that "partial disability" requires physical incapacity as well as loss of wages.

Although the term "partial disability" has not been defined in the statute and has not been specifically construed by our courts, the Supreme Court has defined the term "disability" as that word is used in connection with total disability:

" 'Total disability' means a disability which prevents an employee from obtaining employment commensurate with his qualifications and training. . . ." M. A. Hartnett, Inc. v. Coleman, Del. Supr., 226 A.2d 910, 913 (1967).

The Court continued:

" . . . [W]hen the claimant is unable to obtain employment because of his physical condition, medical evidence that he could perform such work, if he could get it, will not detract from his status of total disability." Hartnett, supra.

In Ham v. Chrysler Corporation, Del. Supr., 231 A.2d 258 (1967), the Court indicated that any determination of total disability requires a weighing of not only medical and physical facts but also other pertinent factors including availability of work.

■ The factors pertinent in a determination of total disability are also pertinent in cases of partial disability. The statute must be construed so that an employee

888

seeking compensation for partial disability following a loss of wages due to an injury or compensable occupational disease is not penalized because he was not totally disabled. He will recover less because he has lost less but the existence and duration of a disability will be determined by the same general tests whether the disability is total or partial. Therefore, when a determination is to be made as to partial disability, the trier of fact must look beyond the medical testimony and consider the other pertinent facts including the availability of appropriate work and the rate of compensation. See Ham v. Chrysler, *supra.*

■ The claimants were found to have suffered from the initial stages of chronic lead poisoning. Subsequently, they were transferred to less remunerative work in low lead areas. It would be contrary to public policy and the purposes of our Workmen's Compensation Act to hold, as suggested by Globe Union on appeal, that the claimants were not entitled to partial disability because even with their illness they were physically capable of continuing to work in the high lead areas at increasing peril to their health. The law does not require, as a prerequisite to recovering compensation for partial disability due to a compensable occupational disease, that the ill employee continue to work until he becomes physically unable to do so.

■ When the claimants' blood lead levels exceeded 80 micrograms per 100 grams of blood, they were no longer permitted to continue to work in the high lead areas. That Globe Union transferred the claimants solely on the basis of the blood lead levels is not controlling. The condition which Globe Union regarded as a mere rise in blood lead levels was found by the Board to be a form of lead poisoning and the fact that this was not the given or recognized reason for the transfer cannot be

held to preclude the claimants from recovering compensation.

■ The Board found that "a casual connection exist[ed] between the lead poisoning suffered by the claimants and their transfers which resulted in the claimants receiving diminished wages during the period of said transfers." The Board thus found that the claimants were partially disabled as a result of their compensable occupational disease. After weighing the medical evidence and the loss of wages, the Court concludes that the Board did not err in its finding of partial disability within the meaning of 19 Del.C. § 2325.

Globe Union's final argument is that there was no competent evidence upon which the Board could base its decision as to the duration and extent of the claimants' partial disability.

The Board found that each of the claimants [1] was partially disabled for the period of time during which he was assigned to the less remunerative work in the low lead areas. Globe Union contends that there was no evidence introduced to indicate that the claimants continued to suffer from lead poisoning after the date of their transfer. As indicated above, however, whether or not the claimants were physically capable of performing the work in the high lead areas is not controlling inasmuch as the claimants were required to remain in their lower-salaried positions in the low lead areas until their blood tests indicated that they were no longer medically endangered by lead poisoning.

■ The claimants suffered from a partial disability within the meaning of the statute for the entire period during which they were forced to work in the low lead areas. Under the special circumstances here present, since the partial disability continued, the claimants were not required

1. One of the claimants decided not to return to the high lead areas in which he had previously worked. The Board found that his partial disability commenced on the date of his transfer and terminated when he signed a notice stating that he intended to continue to work in the low lead area.

to demonstrate that their occupational disease as such continued over the entire period of their transfer. Ham v. Chrysler, Del.Supr., 231 A.2d 258 (1967).

As set forth above, 19 Del.C. § 2325 provides that the measure of compensation to be paid for injuries resulting in partial disability "shall be 66⅔ percent of the difference between the wages received by the injured employee before the injury and the earning power of the employee thereafter." Had the claimamts received the same wages following their transfer to the low lead areas as they had received prior to the transfer, they would be faced with a rebuttable presumption that they had suffered no impairment of their earning power. Ruddy v. I. D. Griffith & Co., Del.Supr., 237 A.2d 700 (1968).

The claimants did not receive the same wages following their transfer, and so the above-mentioned presumption does not arise. Although the claimants received lower wages, this does not necessitate a finding that they suffered an impairment of earning power. The terms "actual earnings" and "earning power" are not synonymous. Ruddy, supra. Rather, it is possible that the claimants received certain benefits from their employer in addition to their new wages.

The statute requires the Board, in construing the words "earning power of the employee thereafter," to consider "the value of gratuities, board, lodging and similar advantages received by the employee in a subsequent employment." 19 Del.C. § 2325.

The claimants petitioned for the difference between the wages they received before their transfer and the wages they received thereafter. Globe Union asserts that there was insufficient evidence to support the Board's finding as to the extent of the claimants' partial disability.

There is a lack of evidence in the record as to any compensation other than wages, which was paid to the claimants while they were partially disabled. It is not the claimants' burden to introduce evidence of other compensation in addition to wages so as to lessen the impairment of their earning power and thereby reduce the amount of their disability benefits. Therefore, absent proof by the employer as to other compensation received by the claimants following their transfer, the extent of their partial disability is to be measured by the difference in wages received by the claimants before and after their transfer.

The Board found that the figures for loss of earnings supplied by the claimants lacked the accuracy necessary for the formulation of an exact award, and left it to the parties to compute the actual loss of earnings for each claimant. If a dispute arises on these issues, further proceedings will be necessary on the administrative level. Following the computation as to loss of earnings, the award to each claimant will amount to 66⅔ percent of the difference between the compensation received by each claimant before his transfer and the compensation received by him thereafter.

The Court concludes there was competent and sufficient evidence to support the findings of the Board as to the duration and extent of the claimants' partial disability.

The decision of the Board is affirmed.

It is so ordered.