IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

TERESA HOLBEN,     :
           :
  Claimant-Below,   :   K18A-05-003 JJC
  Appellant,     :   In and for Kent County
           :
  v.         :
           :
PEPSI BOTTLING VENTURES, LLC, :
           :
  Employer-Below,   :
  Appellee.     :

## OPINION

Submitted: October 3, 2018
Decided: December 13, 2018

Walt F. Schmittinger, Esquire, & Candace E. Holmes, Esquire, Schmittinger & Rodriguez, P.A., Dover, Delaware, *Attorneys for the Appellant*.

Robert S. Hunt, Esquire, Franklin & Prokopik, Wilmington, Delaware, *Attorney for the Appellee*.

**Clark, J.**

Appellant Theresa Holben (hereinafter "Ms. Holben") appeals an Industrial Accident Board (hereinafter "the Board" or "the IAB") decision in favor of her employer, Pepsi Bottling Ventures, LLC (hereinafter "Pepsi"). At the hearing, the parties stipulated that Ms. Holben was partially disabled, but contested her disability rate. After the hearing, the Board fixed the amount.

On appeal, she first challenges the Board's calculation of her partial disability benefits. She primarily argues that a presumption providing that post-injury wages equal post-injury earning power applies to her case.

Second, she appeals the Board's decision to not award her attorney's fees pursuant to 19 *Del. C.* § 2320(10)b. (hereinafter the "thirty-day rule"). Pepsi offered her a compensation amount that exceeded what the Board awarded her, but excluded medical witness fees from the offer. Approximately fifteen days after Pepsi made the offer, she incurred a non-refundable fee for her treating physician's deposition. The Board ultimately awarded medical witness fees, but denied her attorney's fees notwithstanding her success on that issue.

For the reasons discussed below, a presumption that post-injury wages equal the earning capacity of a claimant does not apply in this case. The presumption (1) permits only an inference of *non-impairment* of earning power, and (2) does not apply when a claimant's post-injury wages are significantly less than his or her pre-injury wages. Furthermore, though Ms. Holben's compensation award did not exceed Pepsi's offer, she is nevertheless entitled to attorney's fees because she prevailed on the issue of medical witness fees. To provide otherwise would ignore the plain language of the statute and the purpose of the rule.

2

## I. FACTS OF RECORD, PROCEDURAL BACKGROUND, AND ARGUMENTS ON APPEAL

Pepsi employed Ms. Holben as an account manager for approximately three years before she suffered a work-related right knee injury. As a result, she had a knee surgery on March 23, 2017. For some period afterward, Ms. Holben was totally disabled as a result of the injury. When she partially recovered, Pepsi sought to terminate her total disability payments. After an April 2018 IAB hearing, the parties stipulated to her partial disability. Accordingly, the Board terminated her total disability benefits and found her to be partially disabled as of July 25, 2017.

At the hearing, the IAB considered Ms. Holben's testimony, her treating physician's testimony, the testimony of a defense medical expert, and the testimony of Mr. Truman Perry, a certified vocational case manager. Ms. Holben earned $869.97 per week while working at Pepsi. Prior to that, she worked as a lead stocker at Food Lion, set up displays for Frito-Lay, and set out clothing at Salvation Army. She also had managerial experience as a department manager at Walmart.

When she was released to restricted duty, Pepsi could not accommodate her work restrictions. As a result, Ms. Holben accepted a part-time job at Royal Farms as a facilities/maintenance employee earing $9.50 an hour, totaling $380 a week. She began work at Royal Farms on March 8, 2018, and remains employed there in the same part-time capacity. Ms. Holben testified that she could fulfill her work duties in her new part-time position notwithstanding her work restrictions. She also testified that she hoped that the position would lead to full-time work. In the meantime, she was still seeking full-time employment elsewhere.

Mr. Perry's testimony is also relevant to her appeal. He testified as a certified vocational case manager. Mr. Perry had prepared a labor market survey with Ms. Holben's restrictions in mind, spoke to potential employers he had identified, and visited job sites. In total, there were thirteen jobs listed in his survey and supplement,

ranging from sedentary to medium duty capacity jobs. Mr. Perry calculated the average weekly wage for those positions as $670.68. Furthermore, he testified that nine jobs he had identified in his survey were still available as of nine days before the hearing.

Furthermore, Mr. Perry opined that Ms. Holben's part-time job at Royal Farms required skills below her abilities. He based that opinion primarily on her previous managerial experience. Mr. Perry testified that when he spoke to the potential employers listed on his labor market survey, they told him that Ms. Holben would be a very competitive applicant. He also testified that in January 2018, he contacted twelve of the potential employers. He claimed that five had responded and they stated Ms. Holben had not applied for their positions.

Ms. Holben testified that she applied for the seven prospective positions listed in the labor market survey immediately after she received it.[1] She claimed that she received no response from any of them. Then, Royal Farms hired her for the part-time position. Thereafter, she received an updated survey but did not apply for the newly identified jobs because Royal Farms had already hired her.

In its decision, the Board found Ms. Holben entitled to partial disability benefits, effective July 25, 2017. With regard to the rate, the Board found Mr. Perry's testimony and labor market survey to be credible. Because the Board found Ms. Holben to be underemployed at Royal Farms, it used Mr. Perry's average weekly wage to calculate the difference between her preinjury wages from Pepsi and her earning power after July 25, 2017. In other words, the Board found her post-injury $380 weekly salary to not represent her true earning power. In so finding, the IAB accepted Mr. Perry's testimony that Ms. Holben had a higher skill level than required by Royal Farms. In its decision, the Board placed significant weight on her

---

[1] Mr. Perry initially included seven prospective employers in his survey and later supplemented the survey with additional employers.

managerial experience and the statements Mr. Perry relayed from employers describing her as a competitive candidate for their positions. After considering the evidence, the Board found that $670.68 per week was her true earning power.

Thus, using the average weekly wage of $670.68 from the labor market survey, the Board found Ms. Holben to be entitled to weekly partial disability compensation at the rate of $132.86. Had the Board accepted Ms. Holben's argument, she would have been due significantly higher weekly benefits based upon a larger difference between her Pepsi wages and her Royal Farms wages. In its decision, the Board also awarded Ms. Holben medical witness fees pursuant to 19 *Del. C.* §2322(e). It did not, however, award her attorney's fees because "[t]he settlement offer was greater than the award."

Ms. Holben argues that the Board should have applied a rebuttable presumption that her Royal Farms wages equaled her earning power. In light of that presumption, she contends that the record does not contain substantial evidence supporting the Board's decision. She also argues that the Board abused its discretion by relying on the thirty-day rule when denying her attorney's fees.[2] She emphasizes that although her recovery for partial disability benefits was less than Pepsi's pre-hearing offer, Pepsi did not include an offer to pay her medical witness fees. Since the Board awarded medical witness fees, she contends she is due attorney's fees.

Pepsi counters that a rebuttable presumption that post-injury wages equal earning power does not apply. Furthermore, Pepsi argues that the Board weighed the credibility of the two competing witnesses – Ms. Holben and Mr. Perry. In doing so, Pepsi argues that although post-injury wages must be considered by the Board

---

[2] *See* 19 *Del. C.* 2320(10)b. (providing that a claimant is no longer entitled to attorney's fees if a settlement offer by the defendant is communicated to the claimant or her attorney in writing at least 30 days prior to the hearing date before the IAB, and that settlement offer was equal to or greater than the amount ultimately awarded by the Board on the issue).

5

when calculating Ms. Holben's earning power, the Board was entitled to rely upon Mr. Perry's opinion free of a rebuttable presumption to the contrary. Finally, Pepsi argues that when it made its settlement offer, Ms. Holben had not yet incurred the medical witness fees. Accordingly, Pepsi argues that the Board did not commit legal error when refusing to award her attorney's fees.

## II. STANDARD OF REVIEW

This Court's appellate review of the IAB's factual findings is limited to determining whether the Board's decision was supported by substantial evidence and whether it committed an error of law.[3] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] On appeal, the Court views the facts in the light most favorable to the prevailing party below.[5] Moreover, the Court does not weigh the evidence, determine questions of credibility, or make its own factual findings.[6] Absent errors of law, which are reviewed *de novo*, a decision of the IAB supported by substantial evidence will be upheld unless the Board abused its discretion.[7] The Board abuses its discretion when its decision exceeds the bounds of reason in view of the circumstances.[8]

---

[3] *Bullock v. K-Mart Corp.*, 1995 WL 339025, at *2 (Del. Super. May 5, 1995) (citing *General Motors v. Freeman*, 164 A.2d 686, 688 (Del. 1960)).
[4] *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).
[5] *Chudnofsky v. Edwards*, 208 A.2d 516, 518 (Del. 1965).
[6] *Bullock*, 1995 WL 339025, at *2 (citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965)).
[7] *Hoffecker v. Lexus of Wilmington*, 2012 WL 341714, at *1 (Del. Feb. 1, 2012).
[8] *Id.*

## III.   ANALYSIS

This appeal is limited to two issues. The first issue is a substantial evidence issue regarding whether the Board erred in calculating Ms. Holben's partial disability benefits based upon the labor market survey rather than her post-injury wages. The parties disagree regarding whether the Board should have applied a presumption that her post-injury wages equaled her post-injury earning power. The second issue is whether the Board erred as a matter of law in denying Ms. Holben's attorney's fees.

### A. The rebuttable presumption does not apply to the facts of this case and the Board's calculation of partial disability benefits was supported by substantial evidence.

Under Delaware law, an employee who is partially disabled due to a work-related accident is entitled to compensation.[9] The Worker's Compensation Act authorizes reimbursement for partial disability as follows:

> [f]or injuries resulting in partial disability for work … the compensation to be paid shall be 66 2/3 percent of the difference *between the wages received by the injured employee before the injury* and *the earning power of the employee thereafter*… This compensation shall be paid during the period of such partial disability for work, not, however, beyond 300 weeks.[10]

Partial disability is the "period of time in which an injured employee suffers a partial loss of wages as a result of his [or her] injury."[11] A partial disability award is calculated as the difference between pre-injury wages and post-injury earning power.[12] The phrases "earning power" and "earning capacity" are synonymous.[13] Earning power is a function of the employee's "age, education, general background,

---

[9] *Campos v. Daisy Constr. Co*., 107 A.3d 570, 576-77 (Del. 2014).

[10] 19 *Del. C* § 2325 (emphasis added).

[11] *Globe Union, Inc. v. Baker*, 310 A.2d 883, 887 (Del. Super. 1973), *aff'd,* 317 A.2d 26 (Del. 1974).

[12] 19 *Del. C.* § 2325.

[13] *Ruddy v. I.D. Griffith & Co*., 237 A.2d 700, 703 (Del. 1968).

7

occupational and general experience, the nature of the work performable with the physical impairment, the availability of such work and so on."[14] Moreover, the term earning power is not synonymous with actual earnings or wages received, but rather with one's ability to earn.[15] The fact that a claimant receives lower wages post-injury does not require a finding of diminished earning capacity.[16] The employee must show that the reason for the reduction was the injury.[17]

The parties dispute whether Ms. Holben's post-injury wages from her part-time job at Royal Farms create a rebuttable presumption that her earning power is the same. The Board did not reference such a presumption in its decision, so the Court assumes it did not apply one.

In regards to the applicability of a presumption, the parties dispute whether the Delaware Supreme Court's decision in *Ruddy v. I.D. Griffith & Co.* applies to the facts of this case.[18] In *Ruddy*, the Delaware Supreme Court limited its holding to using actual earnings to presumptively fix earning power when an "*employee receives post-injury compensation equal to that earned by him before the injury. . ..*"[19] Namely, the Court held that in circumstances:

> [w]here the injured employee returns to his former work for the same employer at the same or higher wages . . . *in such situation* there is a well-recognized presumption of *non-impairment* of earning capacity.[20]

---

[14] *Chrysler Corp. v. Williams*, 282 A.2d 629, 631 (Del. Super. 1971), *aff'd,* 293 A.2d 802 (Del. 1972).

[15] *Horne v. Genesis Healthcare*, 2008 WL 282312, at *3 (Del. Super. Jan. 31, 2008).

[16] *Globe Union,* 310 A.2d at 889.

[17] 7 Lex K. Larson, *Larson's Workers' Compensation* § 81.01[1] (Matthew Bender, Rev. Ed. 2017).

[18] *Ruddy,* 237 A.2d at 704.

[19] *Id.* at 703 (emphasis added).

[20] *Id*. (emphasis added).

In *Ruddy,* the Court cited *Larson's Worker's Compensation Law* when addressing the presumption.[21]  That treatise recognizes that this presumption is almost universally applied to presume non-impairment of earning capacity when pre-injury wages and post-injury wages are the same.[22]

Ms. Holben argues that the *Ruddy* case stands for a blanket proposition that an employee's post-injury wages are the best evidence of that employee's post-injury earning power and that they create a presumption to that effect.  In support, she relies upon three Delaware Superior Court cases in arguing that *Ruddy*'s holding has been extended.  Namely, the Superior Court in *Darnell v. BOC Group, Inc.*, *Darling v. Sara Lee Corp.,* and *Horne v. Genesis Healthcare*, relied upon the *Ruddy* decision and, to an extent each other, in referencing the presumption in the context of all subsequent employment settings where the claimant is receiving any wages.[23] Pepsi counters that the *Ruddy* decision was strictly limited to its facts and should not have been extended beyond situations where the claimant returned to the exact same job position with the same pay.

Notwithstanding these three Superior Court decisions, the Court holds that the presumption is available only to support the fact that an employee did not suffer a loss of earning power.  The presumption has never been properly applied in favor of

---

[21] *See id.* (citing the treatise for the proposition of a limited presumption of *non-impairment* of earning capacity).

[22] *Larson*, *supra*, at § 81.01[4].

[23] *See Darnell v. BOC Group, Inc.*, 2001 WL 879911, at *4 (Del. Super. Jul. 26, 2001), *aff'd*, 792 A.2d 188 (Del. 2002) (TABLE) (recognizing the particular circumstances in *Ruddy,* but nevertheless reciting "the general proposition that … the actual wage creates a presumption that may be rebutted by evidence showing that the actual earnings do not fairly reflect [a] claimant's earning capacity"); *Darling v. Sarah Lee Corp.*, 2004 WL 1588253, at *2 (Del. Super. Jun. 21, 2004), *aff'd*, 892 A.2d 1083 (Del. 2006) (TABLE) (writing that a "claimant's actual post-injury wages create a presumption which may be rebutted by other evidence showing that the actual wages do not fairly reflect the claimant's earning capacity"); *and Horne*, 2008 WL 282312, at *3 (relying upon the *Ruddy* decision for the proposition that *any* post-injury earnings create a presumption regarding earning capacity).

fixing an impaired earning capacity. The controlling statute and a larger number of Superior Court cases recognize the same.

First, the controlling statute does not reference a rebuttable presumption. It merely requires the Board to take post-injury compensation "into consideration." Namely, it provides that in addition to considering post injury wages:

> [i]n construing the words "earning power of the employee thereafter" as those words appear in this section, the Board *shall take into consideration* the value of gratuities, board, lodging, and similar advantages received by the employee in subsequent employment.[24]

In a case such as Ms. Holben's, where post-accident wages are significantly less than pre-injury wages and the new job is merely part-time, affording a presumption not otherwise required by statute goes too far. In all instances, post injury wages, after a reasonable effort to fulfill one's earning potential, *must be considered* along with other circumstances when determining earning power. Unless the two jobs involve the same earnings, however, such evidence does not rise to the level of a rebuttable presumption. In fact, in that limited situation, the presumption operates only to create an inference *against* the employee's loss of earning power.

Ms. Holben understandably relies upon the three cases that recited an expanded presumption. They, however, discussed the presumption without applying it or discussing why. Furthermore, all three of these decisions affirmed the IAB's decision and did not hold that a presumption negated the Board's reliance on a labor market survey. In other words, notwithstanding references to the presumption, the courts did not apply it. Rather, all three decisions undertook a thoughtful substantial evidence review and affirmed the Board's decision to reject actual earnings as the best evidence of earning power.

---

[24] 19 *Del. C.* § 2325 (emphasis added).

10

In contrast to those cases, many others have recognized *Ruddy*'s limited holding that the presumption applies only to create an inference *against* a loss of earning power. For instance, the Superior Court in *Globe Union, Inc. v. Baker* held that where a claimant "did not receive the same wages following their [change of employment] the above-mentioned presumption *does not* arise . . ."[25] The court in *Globe Union* also recognized that the presumption is defined as one limited to creating an inference that the claimant has suffered *no* impairment of earning capacity – not that the claimant *did* suffer an impairment of earning capacity.[26] Moreover, the Supreme Court affirmed the Superior Court's holding in *Globe Union.*[27] Many other Superior Court cases over the fifty years since the *Ruddy* decision have correctly articulated and applied the presumption. [28]

Moreover, the facts in *Darling* support Pepsi's substantial evidence argument. Namely, that court upheld the Board's discretion when, as here, the Board favored a labor market survey over actual wages.[29] In *Darling*, the claimant's actual wages, after her return to work, were significantly less than her pre-injury wages.[30] The court, though referencing the existence of a presumption, held that the Board permissibly rejected the presumption in favor of the testimony of a vocational expert

---

[25] *Globe Union*, 310 A.2d at 889 (emphasis added).
[26] *Id.*
[27] *Globe Union, Inc. v. Baker*, 317 A.2d 26, 27 (Del. 1974).
[28] *See e.g. Hudson v. Intervet, Inc.*, 1999 WL 1226990, at *3 (Del. Super. Aug. 10, 1999) (recognizing that the presumption is limited to that of *no* impairment of earning capacity, and only under the circumstances at issue in *Ruddy); Maxey v. Major Mechanical Contractors*, 330 A.2d 156, 158 (Del. Super. 1974) (declining to apply any such presumption when post-injury wages were less than pre-injury wages, but instead applying the objective criteria necessary to evaluate a claimant's earning power); *Delle Donne v. Marcozzi Radio & T.V.,* 263 A.2d 306, 308 (Del. Super. 1970) (recognizing again that the presumption is only one of "non-impairment of earning capacity" and applying it where post-injury wages equaled pre-injury wages with the same employer); *and Sharpe v. W. L. Gore & Assoc.*, 1998 WL 438796, at *3 (Del. Super. May 29, 1998) (recognizing the presumption only as one of "earning capacity not being impaired" when pre- and post-injury wages are the same).
[29] *Darling*, 2004 WL 1588253, at *2.
[30] *Id.* at *1.

11

based upon his labor market survey.[31]  In the *Darling* decision, the Superior Court did not explain why it referenced a rebuttable presumption, how the Board should have applied the rebuttable presumption, or how the appellate court treated it in its review.

The other two Superior Court cases Ms. Holben relies upon regarding this issue are the *Darnell*[32] decision and the *Horne*[33] decision.  Both cases cite *Ruddy,* and *Darnell* also cites two Superior Court decisions that do not support an expanded rebuttable presumption.  Namely, the authority cited by the court in *Darnell* includes only two cases that recognize the rebuttable presumption.  Both cases describe the presumption as one of (1) *non-impairment* and (2) that is appropriate only *when the actual wages mirror those that the claimant earned prior to the injury*.[34]   In this regard, the Court finds no mandatory authority available other than the *Ruddy* decision.  It narrowly limits the presumption.

Although the parties did not address it, the Court recognizes that two of the three Superior Court decisions cited by Ms. Holben, *Darnell* and *Darling*, were affirmed without comment by the Delaware Supreme Court.[35]  The Supreme Court did not discuss the *Darnell* case's reasoning, but rather affirmed the IAB's

---

[31] *Id*. at *2.
[32] *Darnell*, 2001 WL 879911, at *1.
[33] *Horne*, 2008 WL 282312, at *1.
[34] *See Riley Stoker/Ashland Oil v. Cirasole*, 1990 WL 18337, at *2 (Del. Super. Apr. 2, 1990) (ORDER) (refusing to apply the presumption in circumstances not aligning strictly with the facts in *Ruddy* and further holding that it is one of non-impairment of earning capacity), *and Hudson v. Intervet, Inc.*, 1999 WL 1226990, at *2 (Del. Super. Aug. 10, 1999) (ORDER) (applying the presumption only because the employee returned to the same employer at the same pay and applying it when affirming the Board's decision regarding non-impairment of earning capacity).
[35] *See Darnell v. BOC Group, Inc*., 792 A.2d 188, 2002 WL 370289, at *1 (Del. Mar. 4, 2002) (TABLE) (affirming the Superior Court's decision because: (a) the Industrial Accident's Board's decision is based upon substantial evidence in the record to support the Board's conclusion; and, (b) is free of error of law), *and Darling v. Sara Lee Corp*., 892 A.2d 1083, 2006 WL 250495, at *1 (Del. Jan. 31, 2006) (TABLE) (affirming the decision on the basis of and for the reasons assigned by the Superior Court).

reasoning.[36]  Furthermore, the Supreme Court affirmed the *Darling* case without commenting on the presumption.[37]  It is most fairly read as an affirmation of the Board's discretion to rely upon a labor market survey when determining earning power.

Here, rather than apply a presumption, the Board made findings regarding the credibility of the witnesses and the weight due their testimony.  Ms. Holben admitted evidence of her current wages as evidence of her earning power and the Board fully considered it.   Notwithstanding that evidence, the Board found:

> that Claimant is underemployed in her current job at Royal Farms and, therefore, her current wages are not reflective of what she could reasonably earn in a job in the open labor market.  The Board accepts Mr. Perry's opinions that Claimant has shown an ability to perform tasks at a higher level than she is doing in her current job, especially in light of her managerial experience.

The Board correctly refrained from applying or addressing the *Ruddy* presumption because it did not apply.

As a result, the only remaining task is to review the record for substantial evidence supporting the Board's findings.   After review, the Court finds that the record contains substantial evidence supporting the Board's decision that Ms. Holben was underemployed at Royal Farms and that her post-injury wages did not reflect her earning power.  While Ms. Holben argues that she is currently employed within her capabilities, the Board accepted Mr. Perry's testimony that she had skills that were under-utilized at Royal Farms.  Though her current job at Royal Farms has some similarities to her job at Pepsi, substantial evidence supported the Board's finding that the Royal Farms job was below her capabilities.

---

[36] *See Darnell*, 2002 WL 370289, at *1 (declining to comment on the Superior Court's reasoning).
[37] *Darling,* 2006 WL 250495, at *1.

Ms. Holben forcefully argues that the Board's focus should be on the reasonableness of her efforts to find replacement work. As she notes, there is a potentially detrimental public policy result when processes discourage employees from quickly taking available replacement work. The Board, and the Court on review, however, must apply the statute's reference to "earning power."[38] Based upon the statute's language and existing case law, the IAB's findings require, in significant part, an objective analysis. The Board performed that function and determined Ms. Holben's earning capacity for full-time employment in a sedentary to medium duty position. When doing so, it determined her earning power based upon her age, education, work experience, and disability. Where an injured worker secures replacement employment beneath his or her abilities and his or her post-injury earnings are substantially less, courts have been reluctant to "make up the difference" with an award of wage loss benefits.[39]

The Court has considered Ms. Holben's attacks regarding the sufficiency of Pepsi's labor market survey. She argues, *inter alia*, that (1) one of the thirteen jobs in the survey was clearly not within her capabilities; that (2) she had called many of the employers identified in the survey and those employers did not reply; and that (3) Mr. Perry allegedly offered conflicting and inconsistent testimony regarding the bases for his opinion. These arguments go to the weight due the evidence. The Board articulated its reasoning for accepting Mr. Perry's opinion after he explained his processes and the facts upon which he based his opinion. The Board, as the finder of fact, had the discretion to assess the credibility and believability of the witnesses.[40]

---

[38] 19 *Del. C.* § 2325.

[39] *See Larson*, *supra*, at § 84.01[4] (explaining that where a former firefighter decided to take a low paying job as a deer herder, the loss of earnings was held to be voluntary and not compensable).

[40] *Johnson v. Chrysler Corp*., 213 A.2d 64, 66 (Del. 1978).

14

In summary, though the statute requires the Board to consider Ms. Holben's post-injury wages, there is no rebuttable presumption that they equal her earning power. The Board's decision demonstrates that it fully considered her post-injury wages, her testimony regarding job searches, and her inability to find other work. After doing so, the IAB justifiably found that the labor market survey, as opposed to her post-injury wages, demonstrated her true earning power. This Court's review of the Board's decision is limited to whether there was substantial evidence supporting its findings. The facts of record establish that there was.

## B. The Board committed legal error in denying Ms. Holben attorney's fees in this instance.

Ms. Holben challenges the Board's decision to not award her attorney's fees because (1) it awarded her medical witness fees and (2) those fees were not included in Pepsi's pre-hearing offer to settle the matter. Although the amount of attorney's fees awarded by the Board is discretionary, subject to the required factors in *General Motors Corp. v. Cox*,[41] an award of attorney's fees is mandatory when the claimant succeeds on an issue.[42] A claimant cannot recover attorney's fees if the employer sends a written settlement offer to the claimant or the claimant's attorney thirty days prior to the hearing that is equal to or greater than the amount ultimately awarded to the claimant.[43]

---

[41] *General Motors Corp. v. Cox*, 304 A.2d 55, 57 (Del. 1973) (holding that factors to be considered include: "(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly. (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer. (3) The fees customarily charged in the locality for similar legal services. (4) The amount involved and the results obtained. (5) The time limitations imposed by the client or by the circumstances. (6) The nature and length of the professional relationship with the client. (7) The experience, reputation, and ability of the lawyer or lawyers performing the services. [and] (8) Whether the fee is fixed or contingent.").

[42] *Blythe v. VPI Mirrex, LLC*, 2004 WL 1102438, at *6 (Del. Super May 10, 2004).

[43] 19 *Del. C.* § 2320; *Blythe*, 2004 WL 1102438, at *6.

The policy behind the thirty-day rule is "(1) to encourage early settlement by employers before claimants' attorneys must engage in substantial prehearing preparation, and (2) to prevent abuses by claimants' attorneys, who do not accept valid settlement offers, and thereby force unnecessary Industrial Accident Board Hearings."[44] Awarding attorney's fees is also consistent with the public policy underlying the Worker's Compensation Act, which is intended to relieve injured workers of the expense and hazard of a lawsuit.[45]

In this case, Pepsi made a January 24, 2018, settlement offer of $146.42 per week for partial disability benefits to Ms. Holben. The offer expressly excluded medical witness fees. Pepsi sent its offer more than thirty days before the April 23, 2018, hearing.[46] At the hearing, the Board awarded Ms. Holben partial disability benefits in an amount less than Pepsi had offered, but awarded her medical witness fees. Ms. Holben argues that the Board abused its discretion in not awarding attorney's fees because Pepsi's settlement offer excluded medical witness fees. In this case, given the undisputed facts, this matter is an issue of law. Either attorney's fees were mandated under the statute pursuant to the uncontroverted facts, or they were not.

Ms. Holben argues that had she accepted the settlement offer after she paid her treating physician, Dr. Piccioni, she would have forfeited her right to medical witness fees pursuant to 19 *Del. C.* § 2322(e). She argues she was forced to conclude the litigation with a hearing to preserve the right.

In deciding this matter, the Court recognizes and applies several undisputed circumstances. First, when Pepsi sent the settlement offer, Ms. Holben had not

---

[44] *State v. Drews*, 491 A.2d 1136, 1139 (Del. 1985).
[45] *Id.*
[46] Originally, the hearing was scheduled for February 23, 2018, but was continued until April 23, 2018.

incurred medical witness fees. She incurred them on February 6, 2018, because the fees were non-refundable after that point due to the expiration of the doctor's seven-day refund period. Second, *within* the thirty-day period referenced in the statute, she incurred medical expert fees for Dr. Piccioni's deposition. As is typical, Dr. Piccioni testified prior to the hearing by deposition on February 13, 2018.[47] At that point, the thirty-day period referenced in the statute had not passed. Third, medical witness fees, like attorney's fees, are considered costs and not compensation under the statute.[48] Finally, Ms. Holben's compensation award did not exceed the pre-hearing offer, though she successfully recovered medical witness fees that Pepsi exempted from its offer.

The attorney's fee statute provides that attorney's fees "shall be allowed by the Board to any employee awarded *compensation* under Part II of this title and taxed as costs against a party."[49] Accordingly, attorney's fees and medical witness fees are both considered costs by the statute. Pepsi argues that awarding attorney's fees on the basis of recovered costs as opposed to compensation does not make sense. The Court recognizes some validity to that argument. There is reason to question, at some level, the right to recover attorney's fees as a cost simply because the claimant recovered a separate cost.

Nevertheless, the statutory provision creating the thirty-day rule requires that attorney's fees be denied if the claimant does not exceed the employer's pre-hearing offer regarding an "issue."[50] In order to bar the right to attorney's fees under the

---

[47] Dr. Piccioni had a seven-day cancellation policy. Accordingly, the fees are deemed incurred as of February 6, 2018 because after that date they were not refundable. The hearing was initially scheduled for February 23, 2018.

[48] 19 *Del. C.* § 2322(e) (providing that "[t]he fees of medical witnesses testifying at hearings before the Industrial Accident Board in [sic] behalf of an injured employee shall be taxed as a cost to the employer or the employer's insurance carrier in the event the injured employee receives an award").

[49] 19 *Del. C.* §2320(10)a. (emphasis added).

[50] 19 *Del. C.* §2320(10)b.

thirty-day rule, the right to recover attorney's fees must have existed in the first instance. Accordingly, when reading paragraphs a. and b. of Section 2320(10) of Title 19, Delaware Code *in pari materia*,[51] recovering an amount greater than an employer offered regarding any "issue" requires an award of attorney's fees.

The statute creating the thirty-day rule demonstrates that medical witness fees qualify as an "issue." Namely, it requires that a "written offer shall also unequivocally state whether or not it includes medical witness fees and expenses and/or late cancellation fees relating to such medical witness fees and expenses."[52] In applying the common understanding of the term "issue" and the thirty-day rule's reference to medical witness fees and cancellation expenses, recovering medical witness fees potentially triggers the thirty-day rule's consequences. It follows that the inverse must be true. Again, for there to be a right to bar attorney's fees for recovery of medical witness fees, there must have been the right to recover them at the outset. Recovering medical witness fees exempted from a pre-hearing offer triggers an employer's obligation to pay attorney's fees under the statute.

Pepsi further maintains that *sending* its offer before Ms. Holben incurred a cancellation fee barred her recovery of attorney's fees. If the doctor's deposition occurred after the thirty days had passed, but before the hearing, leaving sufficient time to cancel his deposition without recourse, the result may have been different. Under the circumstances of this case, however, Pepsi's argument regarding timing is incorrect. The statute can only be reasonably read to guarantee a claimant's right to consider the offer (including the medical witness fee issue) for a full thirty days.

---

[51] 2B *Sutherland Statutory Construction* § 51.1 (7th ed. 2018) (recognizing that all parts of the same statute are to be construed together, which is a narrow application of the principle of *in paria materia*).

[52] 19 *Del. C.* §2320(10)b.

At IAB proceedings, doctors generally testify by depositions taken in advance of the hearings. In many cases, the depositions occur within the thirty-day window prior to the hearing. Here, Ms. Holben incurred necessary medical witness fees that the Board recognized as such when it found them to be recoverable. In recognition of the purpose of the rule, Pepsi's decision regarding (1) when to make its offer, and (2) to not include medical expert witness fees in its offer, makes it responsible for attorney's fees.

Although not raised by the parties, the Court has considered the language of a similar settlement-inducing statute and a similar Court rule. Their purposes are analogous to the thirty-day rule's purpose and help clarify the issue. First, Title 6 of the Delaware Code contains a pre-judgment interest provision providing for a similar process to that of the thirty-day rule, though based upon a demand by a plaintiff.[53] It provides, in relevant part:

> [i]n any tort action for compensatory damages . . . interest shall be added to any final judgment entered . . . provided that prior to trial the plaintiff had extended to defendant a written settlement demand valid for a minimum of 30 days in an amount less than the amount of damages upon which the judgment was entered.[54]

Also, Superior Court's offer of judgment rule provides that a defendant may:

> [a]t any time more than 10 days before the trial begins . . . serve upon the adverse party an offer to allow judgment to be taken against the defending party . . . If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may [consent to the entry of judgment] … If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.[55]

---

[53] 6 *Del. C.* §2301(d).
[54] *Id.*
[55] Super. Ct. Civ. R. 68.

19

Both procedures require that offers remain open for specified periods of time in order to trigger consequences. The Court recognizes that in contrast to the thirty-day rule, Section 2301(d) of Title 6 *specifically requires* the demand to remain open for a thirty-day period. Likewise, offers of judgment are expressly required to remain open for ten days. The Court has considered that the text of the statute creating the thirty-day rule does not expressly require the offer to remain open for a minimum of thirty days. Nevertheless, it cannot be reasonably read to provide for anything other than a thirty-day period to consider the offer. In light of the thirty-day rule's purpose, it would make no sense to include an attorney's fee provision designed to encourage pre-hearing settlements and not require that the offer remain subject to consideration by the claimant for the thirty days recited in the statute.

To read the thirty-day rule otherwise could lead to absurd results. For instance, applying the statute in the manner Pepsi advocates could permit an employer to tender an offer thirty days before the hearing and then revoke it the very next day. Under Pepsi's reasoning, such a practice would eliminate a claimant's ability to collect attorney's fees in a way the statute could not have intended.[56]

The General Assembly included, in the text of the thirty-day rule, the requirement for a written offer to provide "whether or not it includes medical witness fees." This demonstrates clear legislative intent that medical witness fees be treated in the same way as the issue of compensation for purposes of the thirty-day rule. After considering the policy behind the thirty-day rule, a claimant is due the same thirty-day consideration regarding the "issue" of medical witness fees as he or she is on the "issue" of compensation. For that reason, the Board committed legal error by not awarding attorney's fees to Ms. Holben.

---

[56] *See Spielberg v. State*, 558 A.2d 291, 293 (Del. 1989) (holding that "[i]n the construction of a statute … the statute must be viewed as a whole, and literal or perceived interpretations which yield mischievous or absurd results are to be avoided …").

## IV. CONCLUSION

For the reasons discussed, the Industrial Accident Board's decision is **AFFIRMED, in Part**, and **REVERSED, in Part**. The matter is **REMANDED** with direction to the Board to award Ms. Holben attorney's fees pursuant to 19 *Del. C.* § 2320.